IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Russell Barnes,                              :
                    Petitioner               :
                                             :    No.  386 C.D. 2018
           v.                                :
                                             :    Submitted:  November 9, 2018
Pennsylvania Board of                        :
Probation and Parole,                        :
                    Respondent               :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION BY
JUDGE McCULLOUGH                                    FILED:  January 28, 2019


           Russell Barnes petitions for review of a March 22, 2018 decision of the
Pennsylvania Board of Probation and Parole (Board), which recommitted Barnes as a
convicted parole violator (CPV) and recalculated his parole violation maximum
sentence date to September 25, 2027.


**Background**

           In 2007, Barnes was found guilty of two counts of aggravated assault,
burglary, carrying a firearm without a license, possessing a firearm even though he
was not permitted to possess a firearm, criminal mischief, and violation of probation
for possession of a controlled substance.  (Certified Record (C.R.) at 1.)  Barnes was
originally sentenced to a term of incarceration of 9 to 19 years.  (C.R. at 1-2.)

Barnes' maximum sentence date was January 16, 2025, and his minimum sentence date was January 16, 2015. (C.R. at 2.)

On September 22, 2014, the Board granted Barnes parole, on or after January 16, 2015. (C.R. at 6.) On January 16, 2015, two days before Barnes' actual release date of January 18, 2015, Barnes signed a "conditions of parole" form, which advised, in relevant part, as follows: "If you are convicted of a crime committed while on parole/reparole, the Board has the authority, after an appropriate hearing, to recommit you to serve the balance of the sentence which you were serving when paroled/reparoled, with no credit for time at liberty on parole." (C.R. at 12-14.)

While on parole, Barnes was arrested by the Philadelphia Police Department on September 2, 2015. (C.R. at 21.) That same day the Board issued a warrant to commit and detain Barnes. (C.R. at 18.) On September 3, 2015, Barnes was charged with new criminal charges stemming from the September 2, 2015 arrest including, multiple counts of possession with intent to deliver controlled substances (PWID), conspiracy to commit PWID, simple possession of controlled substances, former felon not to possess a firearm, possession of a firearm with an altered serial number, and possession of instruments of a crime. (C.R. at 19, 43, 49-50.) For Barnes' new criminal charges, bail was set at $450,000 or 10% cash bail; however, Barnes did not post bail. (C.R. at 49.) On October 20, 2015, the Board issued a decision to detain Barnes pending the disposition of the new criminal charges. (C.R. at 24.)

After an April 28, 2017 hung jury mistrial, (C.R. at 62), Barnes entered a negotiated guilty plea on May 25, 2017, to one count of PWID and was sentenced to one to two years at a state correctional institution, with the sentence to "run concurrent with any other sentence" Barnes was serving, to be followed by three

years of probation. (C.R. at 34-35.) On May 31, 2017, Barnes was physically returned to the Department of Corrections' (Department) custody, pending resolution of his status as a CPV. (Supplemental Certified Record (S.C.R.) at 7a.)

The Board provided Barnes with a notice of charges and hearing regarding the revocation of his parole for having a new criminal conviction. (C.R. at 38.) On September 27, 2017, the Board conducted a parole revocation hearing. (C.R. at 26.) On September 27, 2017, the Board voted to recommit Barnes as a CPV to serve 30 months of backtime with no credit for the time spent at liberty on parole. (C.R. at 26-33.) In its hearing report, the Board noted the presumptive range for the new conviction, as follows: "PWID (Heroin)/F[elony]: 24-36 M[onths]." (C.R. at 28.) The Board issued a decision on October 6, 2017, which was mailed on October 17, 2017, recommitting Barnes "to a state correctional institution as a [CPV] to serve 30 months of backtime" for the PWID offense. (C.R. at 87-88.) The same Board decision set Barnes' eligibility for reparole at March 26, 2020. *Id.* As a result of his recommitment as a CPV, Barnes' maximum sentence date was recalculated to September 25, 2027. (C.R. at 89.)

Barnes submitted an administrative remedies form to the Board on November 13, 2017, challenging the timeliness of the parole revocation hearing; the authority of the Board to recalculate and the accuracy of the recalculation of the new CPV maximum sentence; the 30-month term of backtime recommitment; the Board's failure to articulate its basis for not granting him credit for the time he spent at liberty on parole; and the lack of acknowledgement by the Board of the terms of Barnes' negotiated guilty plea, which stated that Barnes' new sentence would run concurrently with any other sentences. (C.R. at 107-112.) Thereafter, by decision dated February 20, 2018, and mailed February 23, 2018, the Board notified Barnes

3

that he was not awarded credit for the time spent at liberty on parole because he had received a new conviction that was the same/similar to his original offense and for "early failure, [eight] months on the street." (C.R. at 99.)

On March 22, 2018, the Board mailed its response to Barnes' administrative appeal, affirming its decision. (C.R. at 113.) The Board explained that its parole revocation hearing had been timely because Barnes was returned to the Department's custody on May 31, 2017, and a hearing was held within 120 days on September 27, 2017. (Board Decision at 1.) The Board also explained that the 30-month backtime imposed on Barnes was within the presumptive range for a PWID-Heroin conviction. *Id.* The Board determined that the decision on whether to grant or deny a CPV credit for time at liberty on parole was purely a matter of discretion and that the Board had adequately articulated a reason for denying credit, *i.e.*, that Barnes' new conviction was similar to his original offense and he had an early failure on supervision. (Board Decision at 2.)

The Board also explained its calculation of Barnes' backtime. The Board noted that when Barnes was paroled on January 18, 2015, he had a maximum sentence date of January 16, 2025, meaning he had 3,651 total days remaining on his sentence. *Id.* The Board explained that it awarded Barnes one day of credit for September 2, 2015, after he was detained following his new criminal charges, pursuant to the Board's warrant. *Id.* Since Barnes never posted bail for the new charges and was, therefore, not incarcerated *solely* because of the Board's detainer during the period from September 3, 2015, until September 27, 2017, the Board did not award him credit for the same. *Id.* The Board also concluded that Barnes had not been eligible to commence service of his original sentence until September 27, 2017, the date when the Board voted to recommit him as a parole violator. *Id.* After

4

subtracting the one day of credit that it awarded Barnes, the Board held that Barnes had 3,650 days remaining on his original sentence. *Id.*

## Discussion

On appeal,[1] Barnes raises the following issues: (1) whether the Board erred by not conducting a parole revocation hearing within 120 days of Barnes' new conviction; (2) whether the Board erred in not applying the presumptive range of 9 to 15 months when it recommitted Barnes to 30 months backtime as a CPV; (3) whether the Board erred in not crediting Barnes for the time when he was at liberty on parole when calculating his new maximum sentence date; (4) whether the Board erred in not awarding Barnes time served for the period between when Barnes was arrested for the new charges and his parole was revoked when calculating his new maximum sentence date; and (5) whether the Board erred by not recommitting Barnes to serve his old sentence concurrently with his new sentence, in accordance with his negotiated plea agreement.

### A. Timeliness of the Hearing

Barnes first argues that the Board erred by not conducting his parole revocation hearing within 120 days of when he entered a plea to PWID. Barnes entered his plea on May 25, 2017, and the revocation hearing was held on September 27, 2017, which was 125 days later. Because section 71.4 of the Board's regulations, 37 Pa. Code §71.4, requires that a hearing be held within 120 days of a new

---

[1] Our scope of review is limited to determining whether constitutional rights were violated, whether the decision was in accordance with the law, or whether the necessary findings of fact were supported by substantial evidence. *Kerak v. Pennsylvania Board of Probation and Parole*, 153 A.3d 1134, 1138 n.9 (Pa. Cmwlth. 2016).

5

conviction, Barnes contends his hearing was untimely. Further, while the hearing examiner found that the Board received official verification of Barnes' sentence on May 30, 2017, and that the hearing was required to take place within 120 days of this date, Barnes maintains that said finding was made based on facts not in evidence.

"When the timeliness of a hearing is challenged, the Board bears the burden of proving by a preponderance of the evidence that the hearing was timely." *Ramos v. Pennsylvania Board of Probation and Parole*, 954 A.2d 107, 109 (Pa. Cmwlth. 2008). Pursuant to section 71.4 of the Board's regulations,

> The following procedures shall be followed before a parolee is recommitted as a convicted violator:
>
> (1) A revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level except as follows:
>
>> (i) **If a parolee is confined outside the jurisdiction of the Department of Corrections**, such as confinement out-of-State, confinement in a Federal correctional institution or **confinement in a county correctional institution** where the parolee has not waived the right to a revocation hearing by a panel in accordance with *Commonwealth ex rel. Rambeau v. Rundle*, 455 Pa. 8, 314 A.2d 842 (1973)**, the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility**.

37 Pa. Code §71.4. Otherwise stated, "'[w]hen a convicted parolee is confined outside the jurisdiction of the Department and then is returned to it, the official

verification *of return* triggers the 120 day period, even if official verification *of conviction* has not yet been received."' *Montgomery v. Pennsylvania Board of Probation & Parole*, 808 A.2d 999, 1001 (Pa. Cmwlth. 2002) (emphasis in original) (quoting *Taylor v. Pennsylvania Board of Probation and Parole*, 624 A.2d 225, 228 (Pa. Cmwlth. 1993)). "This regulation is based upon the principle that the 120 day period does not begin to run until the Board acquires jurisdiction over the parolee." *Hartage v. Pennsylvania Board of Probation and Parole*, 662 A.2d 1157, 1160 (Pa. Cmwlth. 1995).

Here, although Barnes argues he was entitled to a revocation hearing within 120 days of his May 25, 2017 conviction, he misapplies section 71.4 of the Board's regulations. Following his September 2, 2015 arrest and up until the date of his date of conviction, Barnes was confined to the Philadelphia County Prison, (C.R. at 43), and Barnes does not dispute the fact that he was confined to said prison during this time period. Because Barnes was confined in a county correctional institution and there is no indication that Barnes waived his right to a revocation hearing, the Board was required to conduct a revocation hearing within 120 days of receiving official verification of Barnes' *return* to a State correctional facility. *See* 37 Pa. Code §71.4(1)(i). Thus, Barnes is incorrect that the Board had to conduct a hearing within 120 days of his May 25, 2017 conviction.

Here, Barnes does not appear to dispute that he was returned to a State correctional institution on May 31, 2017. Additionally, the Department's "Moves Report" indicates that Barnes was returned to a State correctional institution, *i.e.* State Correctional Institution at Graterford, on May 31, 2017. (S.C.R. at 7a.) Therefore, because Barnes' parole revocation hearing was held on September 27, 2017, which

7

was 119 days after he returned to a State correctional institution,[2] the hearing was timely under the Board's regulations.

### B. The Presumptive Range for Barnes' PWID Conviction

We next address whether the Board erred in not applying a presumptive range of 9 to 15 months when it recommitted Barnes to 30 months' backtime as a CPV. Barnes contends that the conviction for which he pled guilty has a maximum sentence of five years and a maximum fine of $15,000. Barnes argues that pursuant to the Board's regulations, a drug violation conviction with a maximum statutory sentence of five years or less results in a recommitment as a CPV for a period of 9 to 15 months and that, therefore, the Board erred by recommitting him to 30 months' backtime as a CPV.

"Upon recommitment as a CPV, the parolee must serve the remainder of the term which he would have been compelled to serve had he not been paroled . . . ." *Armbruster v. Pennsylvania Board of Probation and Parole*, 919 A.2d 348, 351 (Pa. Cmwlth. 2007). Further, pursuant to section 75.1 of the Board's regulations, the Board applies "presumptive ranges" to CPVs convicted of new criminal offenses while on parole, in order to determine backtime, as follows:

---

[2] While section 71.4 of the Board's regulations technically states that the hearing must be held "within 120 days of the **official verification** of the return of the parolee to a state correctional institution," 37 Pa. Code §71.4 (emphasis added), the general rule is that a hearing is timely whenever it is held within 120 days of the parolee's actual return to a state correctional institution because a parolee's return to state custody marks the earliest date on which the Board could have received official verification, *see Johnson v. Pennsylvania Board of Probation and Parole*, 19 A.3d 1178, 1180 (Pa. Cmwlth. 2011) (holding that revocation hearing was required to be held within 120 days of parolee's actual return to a state correctional institution); *Brooks v. Pennsylvania Board of Probation and Parole*, 704 A.2d 721, 723 (Pa. Cmwlth. 1997) (stating that "the general rule is that the [120] day period begins to run on the date that the parolee is actually returned to a state correctional institution").

(a) Presumptive ranges of parole backtime to be served will be utilized if a parolee is convicted of a new criminal offense while on parole and the Board orders recommitment as a convicted parole violator after the appropriate revocation hearing.

(b) The presumptive ranges of parole backtime are intended to structure the discretion of the Board while allowing for individual circumstances in terms of mitigation and aggravation to be considered in the final decision.

(c) The Board may deviate from the presumptive range or determine that recommitment should not occur, provided written justification is given.

(d) The presumptive ranges are intended to directly relate to the severity of the crime for which the parolee has been convicted.

(e) The severity ranking of crimes listed in § 75.2 (relating to presumptive ranges for convicted parole violations) is not intended to be exhaustive, and the most closely related crime category in terms of severity and the presumptive range will be followed if the specific crime which resulted in conviction is not contained within the listing.

37 Pa. Code §75.1.

"As long as the period of recommitment is within the presumptive range for the violation, the Commonwealth Court will not entertain challenges to the propriety of the term of recommitment." *Smith v. Pennsylvania Board of Probation and Parole*, 574 A.2d 558, 560 (Pa. Cmwlth. 1990). The presumptive ranges for recommitment for CPVs, including those convicted of drug law violations, are found in section 75.2 of the Board's regulations, which provides the following:

9

> If the Board orders the recommitment of a parolee as a convicted parole violator, the parolee shall be recommitted to serve an additional part of the term which the parolee would have been compelled to serve had he not been paroled, in accordance with the following presumptive ranges:
>
> . . .
>
> Drug Law Violations:
>
> Felony with Statutory Maximum of 15 years: 24 months to 36 months
>
> Felony with Statutory Maximum of 10 years: 18 months to 24 months
>
> Felony with Statutory Maximum of 5 years: 9 months to 15 months.

37 Pa. Code §75.2.

Here, Barnes pled guilty to section 13(a)(30) of The Controlled Substance, Drug, Device and Cosmetic Act (Drug Act),[3] which his guilty plea describes as the "Manufacture Delivery, or Possession With Intent to Manufacture or Deliver," (C.R. at 34). Section 13(a)(30) of the Drug Act has different grades depending on the type of drug sold. *See* 35 P.S. §780-113(f).

Barnes' guilty plea does not specify which drug he was convicted of selling. (C.R. at 34.) However, at the parole revocation hearing Barnes stated that he was convicted of one count of "possession with intent to deliver," and that he was

---

[3] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §780-113(a)(30). Pursuant to Section 13(a)(30) of the Drug Act, "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance," is prohibited in the Commonwealth. *Id.*

guilty of having "about 20 bags . . . of heroin" in his car. (C.R. at 80.) Barnes also testified at the hearing that his PWID conviction was based on the drugs found in his car. (C.R. at 81.)

Section 13(f) of the Drug Act states that any person who violates section 13(a)(30) of the Drug Act,

> with respect to: (1) A controlled substance or counterfeit substance **classified in Schedule I or II which is a narcotic drug**, is guilty of a felony and upon conviction thereof shall be sentenced **to imprisonment not exceeding fifteen years**, or to pay a fine not exceeding two hundred fifty thousand dollars ($250,000), or both or such larger amount as is sufficient to exhaust the assets utilized in and the profits obtained from the illegal activity.

35 P.S. §780-113(f) (emphasis added). Under section 4(1)(ii) of the Drug Act, 35 P.S. §780-104(1)(ii), certain opium derivatives, including heroin, are classified as Schedule I drugs. Finally, the definition of "narcotic" in section 2 of the Drug Act, 35 P.S. §780-102, includes "opium derivatives."

Because Barnes' conviction for possession with intent to deliver involved heroin, a Schedule I narcotic, his conviction carried a felony designation with a maximum sentence of 15 years' imprisonment. 35 P.S. §§780-102, 104(1)(ii), 113(f); *see also Guzman v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., No. 2056 C.D. 2012, filed July 22, 2013), slip op. at 6 (holding that under the Drug Act, possession with intent to deliver heroin is a felony with a maximum sentence of 15 years' imprisonment).[4] Pursuant to the section 75.2 of the Board's regulations, the presumptive range for recommitment for a felony drug conviction

---

[4] Pursuant to this Court's Internal Operating Procedures, an unreported opinion of the Court filed after January 15, 2008, may be cited for its persuasive value. 210 Pa. Code §69.414(a).

11

with a statutory maximum of 15 years is 24-to 36-months. 37 Pa. Code §75.2; see also, *Guzman*, slip op. at 6. Here, the Board recommitted Barnes to 30 months' backtime as a CPV. Because the 30-month recommitment period imposed by the Board is within the 24 to 36 month presumptive range for Barnes' revocation conviction, we may not entertain a challenge to the term of Barnes' recommitment.

## C. Credit for Time at Liberty on Parole

Next, we address whether the Board erred by not crediting Barnes for the time when he was at liberty on parole when calculating his new sentence date. Barnes relies on *Pittman v. Pennsylvania Board of Probation and Parole*, 159 A.3d 466 (Pa. 2017), to argue that the Board erred by not articulating a basis for its discretionary decision to deny Barnes credit for the time when he was at liberty on parole.

Section 6138(a) of the Pennsylvania Prisons and Parole Code (the Code) states as follows:

**(a) Convicted violators.**—

(1) A parolee under the jurisdiction of the board released from a correctional facility who, during the period of parole or while delinquent on parole, commits a crime punishable by imprisonment, for which the parolee is convicted or found guilty by a judge or jury or to which the parolee pleads guilty or nolo contendere at any time thereafter in a court of record, may at the discretion of the board be recommitted as a parole violator.

(2) If the parolee's recommitment is so ordered, the parolee shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and, except as provided under paragraph (2.1), shall be given no credit for the time at liberty on parole.

> (2.1) **The board may, in its discretion, award credit to a parolee** recommitted under paragraph (2) **for the time spent at liberty on parole**, unless any of the following apply:
>
> (i) The crime committed during the period of parole or while delinquent on parole is a crime of violence as defined in 42 Pa.C.S. § 9714(g) (relating to sentences for second and subsequent offenses) or a crime requiring registration under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders).
>
> (ii) The parolee was recommitted under section 6143 (relating to early parole of inmates subject to Federal removal order).

61 Pa.C.S. §6138(a) (emphasis added). Under section 6138(a)(2.1) of the Code, the Board has "discretion to award credit to a CPV recommitted to serve the remainder of his sentence, except when the CPV is recommitted for the reasons stated in subsection 6138(a)(2.1)(i) and(ii)." *Pittman*, 159 A.3d at 473. However, in *Pittman*, our Supreme Court concluded that if the Board exercises its discretion pursuant to section 6138(a)(2.1) and denies credit, it "must provide a contemporaneous statement explaining its reason for denying a CPV credit for time spent at liberty on parole." *Id.*[5] at 475. Here, because Barnes was not convicted of a crime of violence, did not commit a crime requiring sex offender registration, and was not subject to a federal removal order, the Board had discretion to deny Barnes credit for the time he spent at liberty on parole, but was required to articulate a reason for its denial.

---

[5] Our Supreme Court noted, however, that "the reason the Board gives does not have to be extensive and a single sentence explanation is likely sufficient in most instances." *Pittman*, 159 A.3d at 475 n.12.

13

In the "additional information" section of the parole revocation hearing report, the Board wrote that "[t]his hearing examiner does not recommend that the inmate be given credit for time spent on liberty due to the inmate's brief period of supervision." (C.R. at 33.) Thereafter, in its October 6, 2017 order, the Board stated that it was not awarding credit for the time Barnes "spent at liberty on parole for the following reason: (1) brief period of supervision." (C.R. at 87-88.)

Subsequently, in a January 22, 2018 memorandum, Board member Everett Gillison wrote that the Board decided not to award Barnes credit for the time he spent at liberty on parole because the "new conviction was same/similar to the original offense." (C.R. at 95.) The memo further advised that the Board did not award credit to Barnes because Barnes "was paroled on Jan. 16, 2015 (9-19 yr. sentence involving [a]ssaults, [d]rugs, [burglary] and guns" and that the "new case involved [d]rugs [and] guns. He pled to the drugs. Still hasn't adjusted his criminal thinking. Early failure[;] [eight] months." *Id.* Additionally, in its February 20, 2018 order, the Board stated that "in its discretion [it] did not award credit to [Barnes] for the time spent at liberty on parole for the following reasons: (1) new conviction same/similar to the original offense; (2) early failure, [eight] months on the street." (C.R. at 99.)

While the brief explanations given by the Board for denying Barnes credit in its hearing report and October 6, 2017 order may not have comported with the requirements of *Pittman*, we conclude that the Board's February 20, 2018 order provides sufficient explanation for the Board's decision to deny Barnes credit.[6] The

---

[6] Although the Board may not have provided a sufficient explanation for denying Barnes credit in its hearing report or initial decision, we have previously held that the Board corrects this omission when it modifies its recommitment decision to include its reason for denying credit for street time. *See Smoak v. Talaber*, 193 A.3d 1160, 1164 (Pa. Cmwlth. 2018) (holding that even though the Board did not provide a sufficient explanation for denying credit for time at liberty on

**(Footnote continued on next page…)**

14

Board explained in its February 20, 2018 order that Barnes was denied credit for the time he spent at liberty on parole because his new conviction was the "same/similar to the original offense" and his parole resulted in an "early failure" after only "[eight] months on the street." (C.R. at 95, 99.) Our review of the record reveals that because Barnes was paroled on January 18, 2015, and arrested on September 2, 2015, he was at liberty on parole for less than eight months before being arrested for the new offenses. (C.R. at 12-14, 21.) Further, given that Barnes' initial conviction included a "violation of probation for possession of a controlled substance," (C.R. at 1), the Board was correct that Barnes' subsequent PWID conviction was somewhat similar to his original conviction because both convictions involved drugs. Accordingly, based on the reasons provided in its February 20, 2018 order, we conclude that the Board provided a sufficient explanation for denying Barnes credit for the time when he was at liberty on parole and, thus, properly exercised its discretion.

### D. Credit for Time Served Following Barnes' Arrest

We next address whether the Board erred by not awarding Barnes credit for time served following his arrest. While Barnes' argument is difficult to understand, he appears to argue that he should have received credit on his original sentence for the period from September 2, 2015, until May 25, 2017, when he was incarcerated following his September 2, 2015 arrest.

---

**(continued…)**

parole in its original recommitment decision, the Board remedied this error when it issued a modified recommitment decision that included its reason for denying credit).

Pursuant to section 6138(a)(4) of the Code, 61 Pa.C.S. §6138(a)(4), "[t]he period of time for which the parole violator is required to serve shall be computed from and begin on the date that the parole violator is taken into custody to be returned to the institution as a parole violator." Further, under section 6138(a)(5) of the Code,

> If a new sentence is imposed on the parolee, the service of the balance of the term originally imposed by a Pennsylvania court shall precede the commencement of the new term imposed in the following cases: (i) If a person is paroled from a State correctional institution and the new sentence imposed on the person is to be served in the State correctional institution.

61 Pa.C.S. §6138(a)(5).

However, it is well established that the requirement that a CPV serve the balance of his original sentence is only operative once "parole has been revoked and the remainder of the original sentence becomes due and owing." *Campbell v. Pennsylvania Board of Probation and Parole*, 409 A.2d 980, 982 (Pa. Cmwlth. 1980); *see also Hill v. Pennsylvania Board of Probation and Parole*, 683 A.2d 699, 702 (Pa. Cmwlth. 1996) (holding that where the Board recommits a CPV to serve the balance of the original sentence before beginning service of a new term, the prisoner's service of backtime on the original sentence must be computed from the date the Board revokes the prisoner's parole). Therefore, "credit for time a CPV spends in custody between imposition of a new sentence and revocation of parole must be applied to the new sentence." *Williams v. Pennsylvania Board of Probation and Parole*, 654 A.2d 235, 237 (Pa. Cmwlth. 1995). Parole revocation occurs once a hearing examiner and Board member or two Board members sign a hearing report recommitting a prisoner as a CPV. *Wilson v. Pennsylvania Board of Probation and Parole*, 124 A.3d 767, 770 (Pa. Cmwlth. 2015); *see also Palmer v. Pennsylvania Board of Probation and Parole*, 134 A.3d 160, 166 (Pa. Cmwlth. 2016) (same).

16

Further, "time spent in custody pursuant to a detainer warrant shall be credited to a convicted parole violator's original term . . . only when the parolee was eligible for and had satisfied bail requirements for the new offense and thus remained incarcerated only by reason of the detainer warrant lodged against him." *Gaito v. Pennsylvania Board of Probation and Parole*, 412 A.2d 568, 571 (Pa. 1980). Accordingly, "if a defendant is being held in custody *solely* because of a detainer lodged by the Board and has otherwise met the requirements for bail on the new criminal charges, the time which he spent in custody shall be credited against his new sentence." *Id.* (emphasis in original). Yet, if a defendant "remains incarcerated prior to trial because he has failed to satisfy bail requirements on the new criminal charges, then the time spent in custody shall be credited to his new sentence." *Id.*; *see also Hughes v. Pennsylvania Board of Probation and Parole*, 179 A.3d 117, 121 (Pa. Cmwlth. 2018) (same).

While *Gaito* holds that the time spent in custody prior to trial shall generally be credited to the new sentence when the parolee is detained pursuant to both a Board detainer and the new charge, in *Martin v. Pennsylvania Board of Probation and Parole*, 840 A.2d 299, 309 (Pa. 2003), our Supreme Court observed an exception to this general rule by which a parolee may be entitled to credit on an original sentence for the time spent in custody. In *Martin*, the parolee was arrested on May 30, 2000, for two counts of driving under the influence (DUI), while on parole. *Id.* at 300. The parolee did not post bail and the Board lodged a detainer against him. *Id.* On July 19, 2001, the parolee was convicted of the DUI charges and sentenced to 48 hours, time served, with one year of probation. *Id.* Following the parolee's conviction for the DUI charges, the Board did not credit any of the time served, pending the DUI conviction, to the parolee's original sentence. *Id.* Because he had only been sentenced to 48 hours, time served, but had remained incarcerated for nearly 14 months before his conviction, the parolee argued that the time he spent

in custody in excess of the 48 hours should have been credited to his original sentence. *Id.*

Our Supreme Court explained that "the considerations relevant to the award of credit are **just and equitable in nature**" and that "[u]nique combinations of circumstances will be presented in different cases that tip the balance for or against the particular allocation of credit." *Id.* at 308 (emphasis added). According to the court, decision-making regarding the allocation of credit is "particularly suited to a discretionary framework with **guidelines to ensure equitable treatment**." *Id.* (emphasis added). Therefore, the court held that "where an offender is incarcerated on both a Board detainer and new criminal charges, **all time spent in confinement must be credited to either the new sentence or the original sentence.**" *Id.* at 309 (emphasis added). Because if the parolee were to "serve the full term of his sentence he would be imprisoned for one year, one month, and nineteen days in excess of that of an individual similarly situated who posted the bail," the court held that the Board was required to give him credit on his original sentence for the time in excess of the 48 hours that he spent in custody. *Id.*; *see also Jones v. Pennsylvania Board of Probation and Parole*, 872 A.2d 1283, 1285 (Pa. Cmwlth. 2005) (relying on *Martin* to credit time parolee spent in custody on new charges in excess of his new sentence to his original sentence).

In *Armbruster*, 919 A.2d at 355, this Court opined that *Martin* holds that where a parole violator is detained "on both the Board's warrant and the new criminal charges and it is not possible to award all of the credit on the new sentence because the period of pre-sentence incarceration **exceeds** the maximum term of the new sentence, the credit must be applied to the offender's original sentence." *Id.* (emphasis in original). Additionally, in the unreported opinion of *Cooper v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., No. 45 C.D. 2016, filed September 9, 2016), we concluded that under *Martin* "when it is not possible to

18

award all of the pre-sentencing credit to the new sentence because the period of pre-sentence incarceration exceeds **the maximum term of the new sentence**, credit must be applied to the parolee's original sentence." *Id.*, slip op. at 4 (emphasis added).

Here, when Barnes was paroled on January 18, 2015, his original maximum date was January 16, 2025, meaning that he had 3,651 days remaining on his original sentence. (Board Order to Recommit, C.R. 89; Board Decision at 2.) The Board gave him one day of credit for the period from September 2, 2015, until September 3, 2015, because he was incarcerated solely on the Board's detainer during that period. However, the Board did not give him credit for any of the other days from September 3, 2015, until September 27, 2015, when he was recommitted as a CPV. *Id.* After giving him credit for the one day that he was detained solely on the Board's detainer, the Board determined that he had 3,650 days remaining on his original sentence with a new maximum date of September 25, 2027. *Id.*

In its decision, the Board explained that pursuant to *Gaito*, it did not award credit for the period when Barnes was incarcerated from September 3, 2015, to September 27, 2015, because he was "incarcerated on both the Board detainer and the new criminal charges, or solely the new criminal charges during that period." (Board Decision at 2.) The Board, however, stated that this time would be applied to his "new sentence when it is calculated." *Id.* The Board also noted that under section 6138(a)(5) of the Code, CPVs "who are paroled from a state correctional institution and then receive another sentence to be served in a state correctional institution must serve the original sentence first," but that "this provision does not take effect until the parolee is recommitted" as a CPV. *Id.* Thus, relying on *Campbell*, the Board concluded that Barnes "did not become available to commence service of [his] original sentence until September 27, 2017, because that is when the Board voted to recommit [him] as a parole violator." *Id.* The Board explained that "[a]dding 3,650 days to that date yielded a new maximum sentence date of September 25, 2027." *Id.*

19

While the Board was correct that parolees generally do not become eligible to serve backtime on their original sentences until parole is revoked by the Board, *see Campbell*, 409 A.2d at 982, and that the time a parolee spends in custody on new charges will be credited to the new sentence when the parolee is detained by both his failure to post bail and a Board detainer, *Gaito*, 412 A.2d at 571, the Board failed to consider Barnes' new conviction and sentence in light of our Supreme Court's ruling in *Martin*. Barnes' guilty plea to the PWID charge stated that he would "be confined for a minimum period of 1 Year(s) and a maximum period of 2 Year(s) at [a] State Correctional Institution," followed by a maximum period of three years' probation. (C.R. at 34.) The guilty plea also stated that Barnes would be given "[c]redit for time served" and that the sentence would commence on May 25, 2017. (C.R. at 34.)

By the time the Board recommitted Barnes as a CPV on September 27, 2017, Barnes had already been incarcerated for a period in excess of the two-year maximum sentence he received for the PWID conviction. Although the Board stated that the period from September 3, 2015, until September 27, 2017, would apply to Barnes' new sentence, this did not take into account the fact that when Barnes was recommitted as a CPV on September 27, 2017, he had been confined for 24 days longer than the two-year maximum sentence for his PWID conviction.[7] The Board erred to the extent it did not credit Barnes' original sentence with the 24-day period of time that he was detained, prior to having his parole revoked, which exceeded his two-year maximum sentence.

---

[7] Of course, at the time that Barnes' parole was revoked, he had actually been confined for two years and **25 days** for the new charges. However, because the Board credited Barnes' original sentence for the one day Barnes was detained solely due to the Board's detainer, *i.e.*, September 2, 2015, the day of his arrest, when Barnes' parole was revoked he had only been confined for 24 days in excess of the maximum sentence for his PWID conviction.

Although *Campbell* and *Williams* hold that a parolee is not eligible to begin serving backtime on his original sentence until his parole is revoked, this rule must give way to the "just and equitable" consideration that "all time spent in confinement must be credited to either the new sentence or the original sentence." *Martin*, 840 A.2d at 308-09. Because Barnes was only sentenced to a two-year maximum sentence for his PWID conviction, if the Board's order were to remain unchanged then Barnes would receive **no credit** for the period from September 3, 2017, until September 27, 2017, that exceeded his maximum sentence. However, as we made clear in *Armbruster*, where a parole violator is detained "on both the Board's warrant and the new criminal charges and it is not possible to award all of the credit on the new sentence" because the incarceration period "**exceeds** the maximum term of the new sentence, the credit must be applied to the offender's original sentence." 919 A.2d at 355 (emphasis in original); *see also Cooper*, slip op. at 4 (same). Here, Barnes remained detained on both the Board's detainer and his new charges from September 3, 2015, until September 27, 2017, but effectively did not receive any credit for the 24-day period that he was detained that exceeded the two-year maximum sentence for his new conviction. Thus, because Barnes is entitled to receive credit for this 24-day period, the Board's decision is reversed to the extent that it did not credit Barnes' original sentence with said period when calculating his new maximum date.

### E. The Board Did Not Permit Barnes to Serve his New Sentence Concurrently with his Original Sentence

Finally, Barnes argues that the Board erred by not permitting him to serve his new sentence concurrently with his original sentence. Barnes' guilty plea to the PWID conviction states that "the sentence is to run concurrent with any other sentence defendant is serving." (C.R. at 34.) Barnes argues that the guilty plea

amounted to a contract between him and the Commonwealth and that he is entitled to the benefit of the bargain he negotiated. Accordingly, Barnes argues that he should be able to serve the new sentence concurrently with the original sentence.

This same issue was addressed by this Court in our *en banc* decision in *Kerak v. Pennsylvania Board of Probation and Parole*, 153 A.3d 1134 (Pa. Cmwlth. 2016). There, the parolee was similarly convicted of a new crime with a sentence to run concurrently with his original sentence. *Id.* at 1135. We determined that under section 6138(a)(5) of the Code, CPVs must serve backtime on their original sentences before they can begin to serve time on a new sentence. *Id.* at 1140 (citing 61 Pa.C.S. §6138(a)(5)). Because section 6138(a)(5) mandates that new sentences be served consecutive to serving backtime on original sentences, we held that the Board did not err in not permitting the CPV to serve his new sentence concurrently with his original sentence, despite the sentencing court's order to the contrary. *Id.* at 1141. We further held that a trial court lacks the authority to order that a sentence for a new conviction run concurrently with the time remaining on a CPV's original sentence. *Id.*; *see also*, *Dorian v. Pennsylvania Board of Probation and Parole*, 409 A.2d 980, 981 (Pa. 1983) (interpreting predecessor statute to section 6138(a)(5) of the Code to hold that a trial court may not impose a sentence on a CPV for a crime committed while on parole to run concurrently with the time remaining on the original sentence); *Palmer*, 134 A.3d at 165 (holding that the Board may not impose backtime to run concurrently with a new sentence for an offense committed while on parole and that any agreement permitting a parolee to run his new criminal sentence concurrently with his original sentence is invalid).

Here, although Barnes' plea agreement permitted him to serve his new sentence "concurrent with any other sentence" he was serving, pursuant to our precedent any sentences for crimes committed on parole must be served consecutive

22

to the original sentence. Thus, the Board did not err in not allowing Barnes' new sentence and original sentence to run concurrently.[8]

## Conclusion

Accordingly, the Board's decision is reversed to the extent the Board did not credit Barnes' original sentence with the 24 days he was confined in excess of the maximum sentence on his new conviction. The matter is remanded to the Board to recalculate his new maximum date, consistent with this opinion. The Board's decision is affirmed in all other respects.

                                  _____

                                  PATRICIA A. McCULLOUGH, Judge

---

[8] Despite our determination that the Board did not err by requiring Barnes to serve his two sentences consecutively, we recognize that Barnes believes he has not received the full benefit of the plea agreement he entered into. However, rather than seeking recourse from the Board, Barnes' "proper remedy is to seek to vacate the plea agreement in the trial court." *Palmer*, 134 A.3d at 166.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Russell Barnes,                                    :
                    Petitioner           :
                                                   :      No.  386 C.D. 2018
          v.                                       :
                                                   :
Pennsylvania Board of                              :
Probation and Parole,                              :
                    Respondent          :

## *ORDER*

AND NOW, this 28th day of January, 2019, the decision of the Pennsylvania Board of Probation and Parole (Board) is reversed to the extent that the Board denied Russell Barnes (Barnes) credit on his original sentence for the period from September 3, 2017 until September 27, 2017, and the matter is remanded to the Board to recalculate Barnes' maximum sentence with this credit. The Board's decision is affirmed in all other respects.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge