IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Allen,                                 :
                                            :
                    Petitioner              :
                                            :
        v.                                  : No. 573 C.D. 2020
                                            : Submitted: March 19, 2021
Pennsylvania Parole Board,                  :
                                            :
                    Respondent              :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                             FILED:  February 15, 2022


        John Allen (Parolee) petitions for review of a decision of the
Pennsylvania Parole Board (Board) that denied his petition for administrative review
of the Board's decision, recommitting him to a state correctional institution (SCI) as
a convicted parole violator (CPV), and declining to award him credit for the time
that he spent at liberty on parole because his new conviction involved the possession
of a weapon.  Parolee contends that the Board erred in finding that his new
conviction involved the possession and/or use of a weapon, and in applying the time
he spent detained on the new charges to his new sentence and not his original
sentence.  For the following reasons, we affirm.

On February 10, 2015, Parolee pleaded guilty, in the Luzerne County Court of Common Pleas, to two separate charges of drug possession with intent to manufacture, sell, or deliver, and received a total sentence of two to four years in an SCI. Certified Record (C.R.) at 1-2. At that time, his maximum sentence date was December 21, 2018. *Id.* at 2. On December 22, 2016, he was released on parole. C.R. at 7.

On August 26, 2017, a Police Criminal Complaint (Criminal Complaint) was filed in Carbon County, charging Parolee with aggravated assault, terroristic threats, simple assault (two counts), recklessly endangering another person, and harassment. C.R. at 11-14. The affidavit of probable cause alleged that on August 23, 2017, Parolee entered a residence, produced a firearm, and pointed it at the victim, stating that he was going to kill her. *Id.* at 16-17. The victim jumped from a second-story bathroom window to escape and suffered multiple injuries. A warrant was issued for Parolee's arrest on August 26, 2017. *Id.* at 38.

On August 29, 2017, Parolee was arrested by the Pennsylvania State Police (PSP) and incarcerated in the Carbon County Prison. C.R. at 22. Monetary bail was set at $100,000 on August 30, 2017, which Parolee did not post. *Id.* at 22, 65. Also on August 29, 2017, the Board issued a detainer warrant. *Id.* at 18. Parolee waived his right to counsel and a detainer hearing. *Id.* at 21. The Board issued a decision detaining Parolee pending disposition of the new criminal charges. *Id.* at 30.

On March 19, 2018, Parolee entered a guilty plea to the charge of terroristic threats as provided in Section 2706(a)(1) of the Crimes Code, 18 Pa. C.S. §2706(a)(1), and was sentenced the same day by the Carbon County Court of

Common Pleas (trial court) to a term of one to two years in an SCI, plus 50 hours of community service. *Id.* at 33, 66. The remaining charges were dismissed. *Id.* at 66.

On April 13, 2018, Parolee was returned to the Board's custody, and, on May 9, 2018, he waived his right to counsel and a revocation hearing, and admitted that he pleaded guilty to the charge of terroristic threats with intent to terrorize another, which is graded as a misdemeanor of the first degree. C.R. at 35, 51.[1] By decision mailed on August 15, 2018, the Board recommitted[2] Parolee to serve 12 months' backtime for the offense of terroristic threats, and declined to award credit for the time he spent at liberty on parole because the "new conviction involved possession of a weapon." *Id.* at 75-76. His maximum sentence date was recalculated as June 3, 2020. *Id.* at 75.

On September 10, 2018,[3] Parolee filed a *pro se* administrative appeal challenging the calculation of his maximum sentence date and the Board's denial of credit for the time that he was at liberty on parole. C.R. at 77-78. In relevant part, Parolee stated: "[I]t was said on my green sheet that my street time was tak[en] because of [the] poss[ession] of a firearm or weapon, but I did [not] nor have [I]

---

[1] On the waiver, Parolee wrote: "I'm at a time when I'm perfecting my life[.] I didn't [mean] any harm." C.R. at 35.

[2] The second Board member signed the hearing report on June 6, 2018. C.R. at 58.

[3] Parolee filed three additional requests for administrative relief, which the Board received on September 11, 2018, September 18, 2018, and December 11, 2018, respectively. *See* C.R. at 80-84, 85-86, and 87-89. It does not appear that the Board considered the additional requests in its decision. *See id.* at 93; *see also* Section 73.1(a)(4) and (b)(3) of the Board's regulations, 37 Pa. Code §73.1(a)(4) and (b)(3) ("Second or subsequent appeals and appeals which are out of time under these rules will not be received[, and s]econd or subsequent petitions for administrative review and petitions for administrative review which are out of time under this part will not be received.").

been charged with a firearm/weapon, so how can my street time be tak[en] for something that do[es not] exist." *Id.*

By decision mailed on May 29, 2020, the Board denied Parolee's request for administrative relief and affirmed its August 15, 2018 decision. C.R. at 93-94. Regarding the recalculation of Parolee's sentence, the Board explained that at the time he was paroled on December 22, 2016, he had 729 days remaining on his original sentence. The Board considered him detained solely on the Board's warrant on August 29, 2017. Then, the Board explained, from August 30, 2017, through his guilty plea and sentencing to a new term in an SCI on March 19, 2018, Parolee was detained on the new criminal charges and did not post bail. It further explained that Parolee did not become available to begin service of his original sentence until June 6, 2018, the date the Board voted to recommit Parolee as a CPV. Adding 728 days (729 days remaining on original sentence minus 1 day of credit) to the June 6, 2018 availability date yielded a new maximum sentence date of June 3, 2020. The Board additionally noted that it did not give Parolee credit for the time period from August 30, 2017, to June 6, 2018, because he was detained on both the Board's warrant and the new criminal charges, or just the new criminal charges, during that time period, and that such time would be credited to his new sentence when calculated. Therefore, the Board determined that it did not err in recalculating Parolee's maximum sentence date.

Regarding the denial of street time credit based on Parolee's new conviction involving the possession of a weapon, the Board stated the following:

> [T]he decision on whether to grant or deny a convicted parole violator credit for time at liberty on parole is purely a matter of discretion. The Prisons and Parole Code [(Parole Code), 61 Pa. C.S. §§101-6309,] authorizes the Board to grant or deny credit for time at liberty on parole

4

for certain criminal offenses. 61 Pa. C.S. §6138(a)(2.l). Pursuant to the Supreme Court's ruling in *Pittman v. P[ennsylvani]a B[oar]d of Prob[ation and] Parole*, [159 A.3d 466 (Pa. 2017)], the Board must articulate the basis for its decision to grant or deny a convicted parole violator credit for time spent at liberty on parole. On your decision mailed on August 15, 2018 (recorded 7/26/2018), the reason you were denied credit for your street time was because your conviction involved possession of a weapon. The record reflects that you were found guilty of [t]erroristic [t]hreats for threatening someone with a weapon. Thus, this is a sufficient reason for denying credit for time spent at liberty on parole. Therefore, the Board did not abuse its discretion by failing to award you credit for the time spent at liberty on parole.

C.R. at 94. Parolee then filed the instant petition for review of the Board's decision.[4]

Parolee raises two issues on appeal. First, Parolee claims that the Board abused its discretion by not awarding him credit for the time that he spent at liberty on parole because "[t]he statement for the reasoning of denying [Parolee] his 'street time' is too vague," and "[t]here needs to be more information about the situation and the firearm that is discussed as the reason of the basis for the denial." Petitioner's Brief at 7.[5] Second, Parolee claims that the Board erred by not crediting to his original sentence the time that he spent detained on the new criminal charges, *i.e.*, from August 29, 2017, through March 19, 2018.

Regarding Parolee's first claim, Section 6138(a)(2.1) of the Parole Code, 61 Pa. C.S. §6138(a)(2.1), "unambiguously grants the Board discretion to award credit to a CPV recommitted to serve the remainder of his sentence." *Pittman*,

---

[4] This Court's review of the Board's decision is limited to determining whether the necessary findings of fact are supported by substantial evidence and whether there was an error of law or a constitutional violation. *Walker v. Pennsylvania Board of Probation and Parole*, 729 A.2d 634, 637 n.4 (Pa. Cmwlth. 1999).

[5] Because Parolee has not numbered the pages of his counseled brief, the page numbers cited in this opinion reflect electronic pagination.

159 A.3d at 473.[6] When exercising its discretion to deny credit for time spent at liberty on parole, the Board must provide a "contemporaneous statement" explaining its rationale. *Id.* at 475. However, the Board's explanation need not be extensive, and "a single sentence explanation is likely sufficient in most instances." *Id.* at 475 n.12. This allows the appellate court reviewing the matter to have a "method to assess the Board's exercise of discretion." *Marshall v. Pennsylvania Board of Probation and Parole*, 200 A.3d 643, 651 (Pa. Cmwlth. 2018), *appeal denied*, 252 A.3d 1078 (Pa. 2021). To meet the standard, "[t]he Board's credit decision should contain sufficient facts related to the parolee 'to ensure the decision is not arbitrary,'" its "statement of reasons should be informed by aggravating and mitigating circumstances and account for the parolee's individual circumstances[,]" and, "[a]t a minimum, . . . must accurately reflect the facts informing its decision." *Id.* at 652. In addition to accuracy, we have also considered whether the Board's stated reason "is documented in the record and affords the parolee notice of the specific acts being referenced." *Plummer v. Pennsylvania Board of Probation and Parole*, 216 A.3d 1207, 1212 (Pa. Cmwlth. 2019), *appeal denied*, 222 A.3d 1130 (Pa. 2020).

Parolee contends that the record does not reflect that his new conviction for terroristic threats involved the possession and/or use of a weapon. Notably, he asserts that he pleaded guilty to one charge, *i.e.*, terroristic threats, and that, pointedly, the crime of terroristic threats "does not contain recognition of a firearm." Petitioner's Brief at 7. Thus, Parolee asserts that denying credit for this reason is "too vague and not a completely accurate depiction of the conviction [that Parolee] faced for [t]erroristic [t]hreats." *Id.* He states: "There needs to be more information

_____

[6] There are two enumerated exceptions to the Board's discretion to award credit, neither of which apply to Parolee here. *See* 61 Pa. C.S. §6138(a)(2.1)(i) and (ii) (denying credit to parolees convicted of certain enumerated offenses or those subject to Federal removal orders).

6

about the situation and the firearm that is discussed as the reason of the basis for [the Board's] denial." *Id.* As such, Parolee argues, the Board abused its discretion by denying credit on this basis.

The Board responds that the Criminal Complaint underlying Parolee's guilty plea to the charge of terroristic threats, among all of the charges listed therein, states that Parolee placed the victim in danger by pointing a firearm at her and threatening to kill her. Respondent's Brief at 9-10 (citing C.R. at 14). Moreover, the Board notes that the Affidavit of Probable Cause and the Criminal Arrest and Disposition Reports[7] recount the victim's assertions that Parolee used a firearm in the commission of the crime. Respondent's Brief at 10 (citing C.R. at 16, 22). The Board then concedes that Parolee was not charged with a firearm offense and that no firearm was confiscated during the investigation of the incident. *Id.* at 10. The Board states, however, that it stated a sufficient reason for denying credit for the time that Parolee spent at liberty on parole, and that the Certified Record supports its exercise of discretion in this regard. We agree with the Board.

Parolee's new conviction was for terroristic threats. Section 2706(a)(1) of the Crimes Code provides: "**(a) Offense defined.--**A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to: (1) commit any crime of violence with intent to terrorize another[.]" 18 Pa. C.S. §2706(a)(1). The term "communicates" is defined in Section 2706(e) as "conveys in person or by written or electronic means, including telephone, electronic mail, Internet, facsimile, telex and similar transmissions." 18 Pa. C.S. §2706(e).

---

[7] The Criminal Arrest and Disposition Reports are Board created documents. C.R. at 22-23. They contains a summary of the new charges and a recommendation to commit Parolee pending the disposition of those charges.

7

In support of the Board's finding that Parolee's new conviction involved the possession of a weapon, the Affidavit of Probable Cause executed by PSP Trooper James D. Quiroz, and sworn to and subscribed before a Magisterial District Judge, states[8] in relevant part:

> On August 23, 2017 Carbon County Communications contacted the [PSP]-Troop-N. Hazleton Barracks to report a female was found screaming in the area of [] Carbon County.
>
> The Victim was transported to the Lehigh Valley Hospital-Hazleton Campus. PSP Patrol Unit members responded to the hospital and interviewed the Victim. The Victim related that a person known to her as "BOOTA" arrived at her residence, located [in] Carbon County on August 23. 2017. The victim related "BOOTA" operates a pickup truck. The Victim let "BOOTA" into the residence. "BOOTA" produced a firearm, pointed it at the Victim and told her that he was going to kill her. The firearm was described by the Victim, having a black handle, silver slide, with the wording Millennium on the slide.
>
> The Victim told "BOOTA" that she needed to go to the bathroom. The bathroom is located on the second floor of the residence. The Victim escaped the residence through the second floor bathroom window. The [V]ictim fell approximately sixteen feet to the ground.
>
> The [V]ictim related she jumped out of the second floor window, because she truly believed that "BOOTA" was going to kill her.
>
> The [V]ictim called out and was assisted by neighbors, who called the Carbon County Communications Center. The Carbon County Communications Center transferred the call to the [PSP]. . . .

---

[8] The Criminal Complaint attested to by Trooper Quiroz states, in relevant part: "**Before a warrant of arrest can be issued, an affidavit of probable cause must be completed, sworn to before the issuing authority, and attached.**" C.R. at 15 (emphasis in original).

8

\* \* \*

> During the course of the investigation, "BOOTA" has been identified as [Parolee] . . . .

C.R. at 16-17.[9]

The foregoing facts were referenced in the Board's September 1, 2017 Criminal Arrest and Disposition Report, *see* C.R. at 22, in the Board's September 1, 2017 Supervision History, *see id.* at 26, in the Board's May 9, 2018 Criminal Arrest and Disposition Report, *see id.* at 32, and in the Board's May 9, 2018 Supervision History. *See id.* at 38. Importantly, on May 9, 2018, Parolee waived his right to counsel and his right to a revocation hearing in which he could have challenged the admission or accuracy of the content of all of the foregoing documents, and admitted his conviction for the terroristic threats charge. *See id.* at 35.[10]

---

[9] As the Pennsylvania Supreme Court has observed:

> [W]e conclude that the "live in girlfriend" statement [in the police report] in fact was admissible. Section 6104(b) of the Judicial Code instructs courts only to declare inadmissible those records created under circumstances or sources that "*indicate*" a lack of trustworthiness, codifying the historical presumption that official records will normally be trustworthy. 42 Pa. C.S. §6104(b) (emphasis added). The police report in the case *sub judice* contained no obvious errors, nor was there any indication that the information that the victim lived with [the applicant] originated from an unreliable source. . . .

*D'Allesandro v. Pennsylvania State Police*, 937 A.2d 404, 414 (Pa. 2007) (emphasis in original).

[10] *See, e.g.*, *also* Section 71.2(11)(iv) of the Board's regulations, 37 Pa. Code §71.2(11)(iv) ("Before the violation hearing the parolee or counsel shall be notified of . . . [t]he right to cross-examine an adverse witness who appears at the hearing, unless the panel or examiner specifically finds good cause for not allowing confrontation."); *Sinwell v. Pennsylvania Board of Probation and Parole*, 406 A.2d 597, 599 (Pa. Cmwlth. 1979) ("The right to confront and cross-examine, however, can be waived, and, if no objection is voiced to the introduction of hearsay evidence at a revocation hearing, a parolee cannot later challenge its admission. Indeed, it is not the **(Footnote continued on next page…)**

More importantly, the Board states in its June 6, 2018 Revocation Hearing Report that it was denying Parolee credit for the time that he spent at liberty on parole because he has (1) a "[p]oor history on parole – 2 delinquencies"; (2)"[technical parole violation (TPV) and] CPV recommits on parole for 2 [counts of possession or possession with the intent to deliver]"; and (3) "per arrest report victim jumped from 2nd floor bathroom window to escape after [P]arolee threatened her at gunpoint." C.R. at 58. Additionally, as indicated above, in the Board's July 26, 2018 Revocation Decision, the Board states that, "in its discretion[, it] did not award credit to [Parolee] for the time spent at liberty on parole for the following reason: --the new conviction involved possession of a weapon." *Id.* at 75-76.

Thus, contrary to Parolee's assertion, the Board did not deny him credit for the time that he spent at liberty on parole based on his conviction for an offense that requires the use of a firearm or weapon as an element of the offense. *See* C.R. at 75-76. Rather, the Board's stated reason for denying such credit was the use of a weapon in Parolee's commission of the terroristic threats offense of which he was admittedly convicted.[11] As outlined above, the Board's reasoning for the exercise of its discretion demonstrates that it considered Parolee's individual circumstances with respect to the commission of this crime, and it is amply supported by the Certified Record of this case.

Parolee cites *Marshall* and *Baldwin v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., No. 907 C.D. 2018, filed April 2, 2019), in

introduction of hearsay evidence at a revocation hearing which is error, but the admission of hearsay over objection and without a finding of good cause.") (citations omitted).

[11] Parolee does not allege any error with respect to the Board's revocation of his parole or his recommitment. Rather, Parolee merely contests the Board's exercise of its discretion with regard to the denial of credit for the time that he spent at liberty on parole under Section 6138(a)(2.1) of the Parole Code.

support of his claim that the Board abused its discretion in denying him credit in this case. However, as this Court has explained:

> In exercising its discretion in a credit determination, "the Board's statement of reasons should be informed by aggravating and mitigating circumstances and account for the parolee's individual circumstances." *Marshall*, 200 A.3d at 652. For example, the Board's given reason must be "accurate" and "relate[d] to the parolee's offenses." *Id.* at 650.
>
> In both *Marshall* and *Baldwin*[,] there was a clear discrepancy between the record and the Board's stated reason, which necessitated correction on remand. In *Marshall*, the Board denied a parolee street time credit for nearly nine years due to "felony drug[-]related *crimes*." *Id.* at 650 (emphasis added). However, a review of the record revealed the existence of only one felony drug conviction, not several. In *Baldwin*, we held the Board's three-word reason of "poor supervision history" was inconsistent with the parole officer's report and the parolee's "spotless record" of compliance with parole supervision. *Id.*, slip op. at 2, 6[.] This included a review of the parolee's nine years on reparole without incident, in which he secured stable housing and employment, complied with curfew, and tested negatively for drugs.
>
> Citing *Marshall*, [the parolee] argues the Board's stated reason is inadequate because "the [r]ecord refers to no such [poor supervision] history[,] only false arrests." [Parolee's Brief] at 12. We disagree.
>
> Unlike in *Marshall* and *Baldwin*, there is no question as to the accuracy of the Board's provided reason here. Our review of the record reflects a number of supervision failures. . . . Therefore, in contrast to *Marshall* and *Baldwin*, the record supports the Board's articulated reason for denying credit.

*Plummer*, 216 A.3d at 1212.

11

Likewise, in the instant case, "in contrast to *Marshall* and *Baldwin*, the [Certified Record] supports the Board's articulated reason for denying credit," *id.*, and there is no discrepancy between the Certified Record and the Board's stated reason. As a result, Parolee's allegation of error in this regard is without merit because the Board exercised its discretion and denied him credit for his street time based on the use of a weapon in the commission of the terroristic threats conviction, which is supported by the Certified Record, and not because Parolee was convicted of a firearms or weapons offense.

Parolee's second claim is that the time he served from August 29, 2017, when he was incarcerated on the Board's detainer, through March 19, 2018, when he was sentenced on the new conviction, should be applied to his original sentence instead of his new sentence. Petitioner's Brief at 10. He asserts that the Board erred in crediting the time to his new sentence because Section 6138(a)(5) of the Parole Code, 61 Pa. C.S. §6138(a)(5), mandates that he serve his original sentence first.

The Board responds that Section 6138(a)(5) of the Parole Code does not take effect until the parolee is actually recommitted as a CPV. It points out that, in Parolee's case, he was not recommitted as a CPV until June 6, 2018, when the second Board member signed the revocation hearing report recommending that Parolee be recommitted as a CPV. *See* C.R. at 58. Therefore, the Board claims that the time period at issue was properly credited to his new sentence.

Under Section 6138(a)(4) of the Parole Code, 61 Pa. C.S. §6138(a)(4), "[t]he period of time for which the parole violator is required to serve shall be computed from and begin on the date that the parole violator is taken into custody to be returned to the [SCI] as a parole violator." Further, Section 6138(a)(5)(i) of the Parole Code establishes, in relevant part:

(5) If a new sentence is imposed on the parolee, the service of the balance of the term originally imposed by a Pennsylvania court shall precede the commencement of the new term imposed in the following cases:

(i) If a person is paroled from a[n SCI] and the new sentence imposed on the person is to be served in the [SCI].

61 Pa. C.S. §6138(a)(5)(i).

As noted by the Board, Section 6138(a)(5) of the Parole Code pertains to the order of service of sentences and requires that a CPV who receives a new sentence to be served in an SCI must serve the backtime on his original state sentence first. However, it is well settled that the requirement that a CPV serve the balance of his original sentence "only becomes operative when parole has been revoked and the remainder of the original sentence becomes due and owing." *Campbell v. Pennsylvania Board of Probation and Parole*, 409 A.2d 980, 982 (Pa. Cmwlth. 1980). It is also well settled that "[p]arole revocation occurs once a hearing examiner and Board member or two Board members sign a hearing report recommitting a prisoner as a CPV[,]" *Barnes v. Pennsylvania Board of Probation and Parole*, 203 A.3d 382, 392 (Pa. Cmwlth. 2019), which here occurred on June 6, 2018.

Here, Parolee's claim concerns the time he spent in pretrial detention from August 29, 2017, through March 19, 2018, when he was sentenced on the new criminal charges. When pretrial detention is at issue, a parolee who posts bail on the new charges and is therefore detained solely on the Board's warrant, has his time credited to the original sentence, but a parolee who does not post bail on the new charges and remains incarcerated on both the new charges and the Board's warrant has the credit for time served applied to the new sentence. *See Gaito v. Pennsylvania Board of Probation and Parole*, 563 A.2d 545, 547 (Pa. Cmwlth. 1989) ("Time spent

13

in custody pursuant to a detainer warrant shall be credited to a [CPV's] original term only when the parolee was eligible for, and had satisfied, bail requirements for the new offense and thus remained incarcerated only by reason of the detainer warrant against him.").

In this case, Parolee was incarcerated on both the Board's detainer and his new criminal charges from August 30, 2017,[12] through March 19, 2018, the date of his sentencing, because he did not post bail on the new criminal charges. C.R. at 41. When a parolee "[i]s detained under both the Board's warrant and the new criminal charges, this time is properly allocated to his new criminal sentence[.]" *Hammonds v. Pennsylvania Board of Probation and Parole*, 143 A.3d 994, 999 (Pa. Cmwlth. 2016). Furthermore, it was not until June 6, 2018, when the second Board member signed the hearing report recommending the revocation of Parolee's parole, that Section 6138(a)(5)(i) became operative and, thus, the remainder of his original sentence became due and owing. We therefore find no error in the Board's decision to apply the period of presentence confinement time from August 30, 2017, to March 19, 2018, to Parolee's new sentence in accordance with *Gaito* and *Barnes*. As Parolee correctly notes in his brief, Petitioner's Brief at 9-10, the time period from March 19, 2018, to June 6, 2018, would also be properly credited to his new sentence. *Barnes*, 203 A.3d at 392.

Accordingly, the Board's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

---

[12] The Board found that he was detained solely on its warrant on August 29, 2017, and credited one day to his original sentence.

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Allen,                              :
                                         :
                    Petitioner           :
                                         :
        v.                               :  No. 573 C.D. 2020
                                         :
Pennsylvania Parole Board,               :
                                         :
                    Respondent :

# **O R D E R**

AND NOW, this 15th day of February, 2022, the order of the Pennsylvania Parole Board dated May 29, 2020, is AFFIRMED.


                                _____
                                MICHAEL H. WOJCIK, Judge