# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Breeze Johnson,               :
             Petitioner    :   CASES CONSOLIDATED
                       :
        v.             :   No. 873 C.D. 2020
                       :   No. 1235 C.D. 2020
Pennsylvania Parole Board,  :   Submitted: August 6, 2021
             Respondent   :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge[1]
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER           FILED: February 25, 2022

Breeze Johnson (Johnson) petitions for review of the October 27, 2020 Order of the Pennsylvania Parole Board (Board), which granted his petition for administrative review in part and determined that Johnson's new maximum sentence date was to be recalculated to account for 286 days that he resided in inpatient or community corrections facilities, making his new maximum sentence date October 10, 2022.[2] Johnson is represented by Jessica A. Fiscus, Esquire (Counsel), of the

---

[1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn Jubelirer became President Judge.

[2] By way of background, on August 24, 2020, Johnson filed a pro se Petition for Review in this Court at docket No. 873 C.D. 2020, followed by a counseled Ancillary Petition for Review, challenging the Board's July 31, 2020 Order, which reversed an August 28, 2019 Decision that set Johnson's new maximum sentence date to May 8, 2023, based on the revocation of his parole and recommitment as a convicted parole violator and recalculated Johnson's maximum sentence date

Erie County Office of the Public Defender.  Counsel has filed an Application to Withdraw Appearance (Application to Withdraw) and a No-Merit Letter, which are based on her conclusion that Johnson's Petitions for Review lack merit.  Upon review, we grant Counsel's Application to Withdraw and affirm the Board's October 27, 2020 Order.

## I.  BACKGROUND

After pleading guilty in the Court of Common Pleas of Lackawanna County (Lackawanna Common Pleas) to simple assault, resisting arrest, and the manufacture, sale, or delivery of, or possession with intent to deliver, a controlled substance, Johnson was sentenced on February 28, 2012, to an aggregate term of 1 year, 11 months, and 30 days' to 6 years' imprisonment.  (Certified Record (C.R.) at 1-2.)  Johnson also received probationary sentences for the resisting arrest and

---

as July 23, 2023.  (Certified Record (C.R.) at 151-52.)  Prior to the filing of this Petition for Review, the Board mailed a separate decision to Johnson on August 7, 2020, setting a new July 23, 2023 maximum date.  (*Id.* at 165.)  Johnson thereafter filed an administrative remedies form with the Board on September 3, 2020, challenging that decision and arguing, *inter alia*, that he was entitled to credit for time spent at various inpatient and community corrections facilities.  (*Id.* at 163-64, 166-68.)  The Board mailed an Order to Johnson on October 27, 2020, granting his September 3, 2020 petition for administrative review in part and reversing the Board's August 7, 2020 Decision by recalculating Johnson's maximum sentence date as October 10, 2022.  (*Id.* at 176-77.)  Johnson filed a second, counseled Petition for Review in this Court on November 27, 2020, challenging the Board's October 27, 2020 Order, which we docketed at No. 1235 C.D. 2020.

On March 22, 2021, we granted Johnson's request to consolidate the matters and designated the record filed on January 19, 2021, at No. 1235 C.D. 2020, as the Certified Record in this matter.  Thus, all citations to the Certified Record in this opinion refer to the record filed at No. 1235 C.D. 2020.  Additionally, given the above procedural history of this case and the Board's reference to its October 27, 2020 Order as "the Board's final adjudication in this matter," (C.R. at 177), our review will focus on the Board's October 27, 2020 Order, rather than the Board's July 31, 2020 Order appealed at No. 873 C.D. 2020.  Further, because the new maximum date set by the July 31, 2020 Order is no longer in effect and the Board restated the reasons for rejecting Johnson's arguments beyond the credit issue in the October 27, 2020 Order, Johnson's petition for review from the July 31, 2020 Order is moot and shall be dismissed as such.

2

possession with intent to deliver charges, as well as for recklessly endangering another person and disorderly conduct. (*Id.* at 2-3.) At the time of his sentencing, Johnson's minimum sentence date was August 2, 2013, and his maximum sentence date was August 3, 2017. (*Id.* at 2.)

On August 8, 2013, Johnson was released on parole to a specialized community corrections center (CCC). (*Id.* at 8.) On October 7, 2013, the Board declared Johnson delinquent, effective that date, for failing to report for a scheduled appointment and moving from his approved residence. (*Id.* at 13-14.) By Board action recorded on November 4, 2013, the Board cancelled Johnson's delinquency and continued him on parole, based on parole supervision staff's recommendation that Johnson "be diverted to the ADAPPT program as a half-way back" to undergo drug and alcohol counseling. (*Id.* at 15-16.) On May 21, 2014, Johnson was successfully discharged from ADAPPT to an approved residence. (*Id.* at 31.)

On June 13, 2016, the Board issued a warrant to commit and detain Johnson after the Pennsylvania State Police arrested and charged him with numerous traffic violations and drug charges in Carbon County. (*Id.* at 17-23.) Specifically, Johnson was charged with the manufacture, delivery, or possession with intent to manufacture or deliver controlled substances (heroin) (two counts), possession of a controlled substance by a person not registered (two counts), possession of drug paraphernalia (two counts), following too closely (one count), disregarding traffic lanes (one count), careless driving (one count), and driving without a license (one count). (*Id.* at 19-21, 72.) Johnson was confined in the Carbon County Prison, and he did not post bail on these new charges. (*Id.* at 37, 71.) On June 24, 2016, the Board issued a notice of charges and hearing to Johnson, notifying him of his new criminal charges and indicating that a detention hearing would be held on July 11,

3

2016. (*Id*. at 28.) Johnson waived his rights to counsel and a detention hearing on the same date. (*Id*. at 29-30.) By Board action recorded on July 27, 2016 (mailed on August 24, 2016), the Board detained Johnson pending disposition of his new criminal charges. (*Id*. at 34.) On September 18, 2016, Johnson submitted an administrative remedies form requesting that the Board reconsider detaining him and instead order house arrest, which the Board denied by decision mailed on February 6, 2018, on the basis such decision was not subject to appeal. (*Id*. at 45-46, 48.)

On March 8, 2017, Lackawanna Common Pleas ordered that Johnson be detained as a special probation violator because of his arrest on the new Carbon County charges. (*Id*. at 147.) On May 31, 2017, Johnson's special probationary sentences relating to his original resisting arrest and possession with intent to deliver charges were revoked, and he received an aggregate violation of probation (VOP) sentence of 10 months and 15 days' to 4 years' imprisonment (Recidivism Risk Reduction Incentive (RRRI) eligible) to be served concurrently with Johnson's backtime. (*Id*. at 39-42, 154.) His maximum VOP sentence date was calculated as May 31, 2021.[3] (*Id*. at 39, 41.)

On August 29, 2017, the Board cancelled its June 13, 2016 warrant to commit and detain Johnson.[4] (*Id*. at 38.) However, on September 14, 2017, the Board again declared Johnson delinquent for control purposes effective June 13, 2016. (*Id*. at 44.)

On June 3, 2019, Johnson pleaded guilty to possession of a controlled substance by a person not registered in the Court of Common Pleas of Carbon

---

[3] A Carbon County detainer was also lodged on June 14, 2016, as to Johnson's new Carbon County charges. (C.R. at 40, 42.) Moreover, Lackawanna Common Pleas noted in its order that Johnson was not entitled to any time credit because he was "currently held in lieu of bail" on the new offenses in Carbon County. (*Id*. at 154.)

[4] Johnson's original maximum sentence date expired on August 3, 2017. (C.R. at 1-2.)

4

County (Carbon Common Pleas) and was sentenced to 6 to 12 months' imprisonment in a state correctional institution (SCI). (*Id.* at 50, 73, 98.) He was credited 351 days for time served against this sentence and directed to serve the sentence consecutively with any other sentence Johnson was then serving. (*Id.* at 50.) Johnson also pleaded guilty to possession of drug paraphernalia and was sentenced to 4 to 12 months' imprisonment in an SCI to be served consecutively with his sentence for possession by a person not registered and any other sentence he was then serving. (*Id.* at 51, 73, 98.) The remaining counts were dismissed. (*Id.* at 73-74.)

On June 25, 2019, the Board issued a notice of charges and hearing to Johnson, advising him that a revocation hearing would be held due to his new convictions. (*Id.* at 54.) That same day, Johnson waived his rights to counsel and revocation and panel hearings, and he admitted to his new convictions. (*Id.* at 57-59.) Based on Johnson's new convictions, the hearing examiner and a Board member recommended that Johnson be recommitted as a convicted parole violator (CPV) to serve six months' backtime in an SCI without credit for time spent at liberty on parole (street time). (*Id.* at 62, 64-66.) The hearing examiner and a Board member recommended denying Johnson credit for his street time because Johnson's new conviction was the same/similar to his original offense and due to Johnson's "[u]nresolved drug and alcohol issues." (*Id.* at 62.) The hearing examiner signed the revocation hearing report on July 17, 2019, and the Board member executed the revocation hearing report on July 28, 2019. (*Id.* at 66.)

By Board Decision recorded on August 1, 2019 (delivered to Johnson on August 28, 2019), the Board recommitted Johnson as a CPV to serve six months' backtime in an SCI based on his new convictions. (*Id.* at 67-68.) The Board, in its

discretion, denied Johnson credit for his street time because his "new conviction [was the] same/similar to [his] original offense" and due to Johnson's "unresolved drug and alcohol issues." (*Id.*) The Board further determined that Johnson would not be eligible for reparole until September 18, 2019, and recalculated his maximum sentence date as March 14, 2023. (*Id.*) Consistent with this Decision, on August 19, 2019, the Board issued an Order to Recommit, therein noting that Johnson's original maximum sentence date was August 3, 2017, and that he was released on parole on August 8, 2013. (*Id.* at 103-04.) The Board gave Johnson backtime credit for 76 days from June 14, 2017, to August 29, 2017. (*Id.*) After accounting for this credit, the Board calculated that Johnson had 1,380 days remaining on his original sentence. (*Id.*) Adding the 1,380 days to the custody for return date of June 3, 2019, i.e., the date he was sentenced in Carbon County, yielded a recalculated maximum sentence date of March 14, 2023. (*Id.*)

On August 28, 2019, the Board issued a second (Modified) Order to Recommit, substituting July 28, 2019, i.e., the date the Board member signed the revocation hearing report and voted to recommit Johnson, as the proper custody for return date. (*Id.* at 105-06.) The Board added 1,380 days to that date and recalculated Johnson's new maximum sentence date as May 8, 2023. (*Id.*) By Board action recorded on the same day, the Board modified its August 1, 2019 Decision, "due to receipt of additional information," to reflect Johnson's new maximum sentence date of May 8, 2023, and to change his reparole eligibility date to November 13, 2019. (*Id.* at 107-08.)

On August 28, 2019 (received on September 18, 2019), Johnson submitted an administrative remedies form, arguing that the Board used the wrong custody for return date and incorrectly recalculated his maximum sentence date. (*Id.* at 114-15.)

6

Johnson contended that the Board erred by failing to grant him credit for his street time spent in good standing and that his guilty pleas occurred after his maximum sentence date had expired. (*Id*. at 115.) On April 27, 2020, Johnson submitted additional correspondence further explaining his administrative challenges.[5] (*Id*. at 122-23.)

The Board responded to Johnson's September 18, 2019 administrative appeal on July 31, 2020, and reversed its August 28, 2019 Decision with respect to Johnson's maximum sentence date of May 8, 2023. (*Id*. at 151-52.) In doing so, the Board first explained that its decision to recommit Johnson as a CPV authorized the recalculation of his maximum sentence date to reflect that he received no credit for his street time. Thus, at the time Johnson was paroled on August 8, 2013, with a maximum sentence date of August 3, 2017, and because the Board denied him credit for his street time, Johnson had 1,456 days remaining on his original sentence. (*Id*. at 151.) The Board then explained that Johnson was not entitled to presentence confinement credit for any of the time he spent in prison prior to his parole revocation on July 28, 2019, because he was never held solely on the Board's warrant during that period. (*Id.*) The Board noted, however, that any time Johnson already served would be calculated by the Department of Corrections (DOC) and credited to his new state sentence. (*Id*.) The Board also noted that Johnson's probation had been revoked and that he was resentenced to one to four years in an SCI with a maximum expiration date of May 31, 2021. (*Id.*) The Board next explained that because Johnson received a new state sentence to be served in an SCI, he was required to serve his backtime on his original sentence first. However, Johnson did not become available to commence service of his original sentence until

---

[5] By Board action recorded on May 26, 2020, the Board denied Johnson parole and directed him to serve the remainder of his unexpired maximum sentence. (C.R. at 109-10.)

July 28, 2019, the date the Board member voted to revoke his parole and recommit him as a CPV. Adding 1,456 days to that availability date yielded a recalculated maximum sentence date of July 23, 2023. (*Id.* at 152.) The Board's decision thus reversed its August 28, 2019 Decision as to Johnson's maximum sentence date and noted that a new Board decision would be mailed to Johnson. The Board also stated that Johnson could file a petition for administrative review from the Board's forthcoming decision if he disagreed with the Board's recalculation of his maximum sentence date. (*Id.*) On August 31, 2020, Johnson petitioned this Court for review of the Board's July 31, 2020 Order, which was docketed at No. 873 C.D. 2020.

On July 29, 2020, the Board issued a third (Modified) Order to Recommit, this time determining that Johnson was not entitled to the 76 days of backtime credit that had been initially awarded in its August 19, 2019, and August 28, 2019 Orders to Recommit. (*Id.* at 111-12.) The Board thus recalculated how many days Johnson had left to serve on his original sentence to 1,456 days, and adding those days to his custody for return date of July 28, 2019, yielded a new maximum sentence date of July 23, 2023. (*Id.* at 111.) Consistent with the third (Modified) Order to Recommit, the Board, by Decision recorded on July 29, 2020 (mailed on August 7, 2020), modified its August 1, 2019, August 28, 2019, and May 26, 2020 Decisions to reflect Johnson's new maximum sentence date of July 23, 2023. (*Id.* at 113.)

On September 3, 2020 (received on September 9, 2020), Johnson submitted a counseled administrative remedies form, challenging the Board's August 7, 2020 Decision. Therein, Johnson argued that the Board erred by: (1) "fail[ing] to award credit against [his] original sentence for time that exceeded the maximum sentence allowable by law on the new sentence"; (2) determining that his new Carbon County sentences were to be served consecutively rather than concurrently; (3) using the

8

wrong custody for return date; (4) failing to award confinement credit for the period of June 13, 2016, through June 3, 2019 (aside from the 351 days of credit he received for time served on the new sentences); and (5) failing to award credit for time Johnson spent at inpatient facilities or community corrections facilities. (*Id*. at 163-64.) Johnson subsequently filed a pro se administrative remedies form on September 8, 2020, raising issues similar to those raised in his counseled administrative remedies form. (*Id*. at 166-73.)

On October 26, 2020, the Board issued a fourth (Modified) Order to Recommit and accompanying Board action recorded the same day, reflecting that, in its discretion, the Board awarded Johnson partial credit for the time he spent at inpatient facilities and/or CCCs and modified his maximum sentence date to October 10, 2022. (*Id*. at 155-57.) Consistent with this Order to Recommit and Board action, the Board formally responded to Johnson on October 27, 2020, and granted his request for credit. (*Id*. at 176-77.) In so doing, the Board first explained that while all the other substantive issues raised in Johnson's correspondence to the Board were addressed in its July 31, 2020 Order, those reasons were set forth again. (*Id.* at 176.) It then explained that Johnson was entitled to partial credit, 286 days, for the time he served in inpatient facilities or CCCs from August 8, 2013, to May 21, 2014. (*Id*.) Subtracting 286 days from the 1,456 days remaining on Johnson's original sentence at the time he was paroled left Johnson with 1,170 days remaining on his original sentence. Adding 1,170 to his custody for return date of July 28, 2019, yielded a recalculated maximum sentence date of October 10, 2022. (*Id*. at 177.) Accordingly, the Board reversed its Decision mailed on August 7, 2020, with respect to Johnson's maximum sentence date and its previous decision to deny him credit for all of Johnson's street time. (*Id*.) The Board also noted that its October 27, 2020

9

Order would serve as the Board's final adjudication in the matter and that Johnson was required to file a petition for review with this Court if he wished to challenge his new maximum sentence date. (*Id.*) Johnson, with the assistance of Counsel, petitioned this Court for review of the Board's October 27, 2020 Order on November 27, 2020, which was docketed at No. 1235 C.D. 2020. By order dated March 22, 2021, we consolidated Johnson's appeals at Nos. 873 and 1235 C.D. 2020.

In his Petitions for Review, Johnson essentially argues that the Board erred by: (1) using the wrong custody for return date; (2) determining that his new Carbon County sentences were to be served consecutively rather than concurrently; (3) failing to award credit against Johnson's original sentence for "time that exceeded the maximum sentence allowable by law on the new sentence"; and (4) failing to award Johnson credit for the time he was incarcerated between June 13, 2016, and June 3, 2019, aside from the 351 days Carbon Common Pleas credited to the new sentence. (Petitions for Review ¶¶ 6-10.)[6] According to Johnson, these errors caused the Board to miscalculate his "re-parole eligibility date and new maximum sentence." (*Id.* ¶ 10.)[7]

---

[6] We have reordered Johnson's issues to reflect the order in which they appear in Counsel's No-Merit Letter.

[7] In his Petition for Review filed at No. 873 C.D. 2020, Johnson additionally challenged the Board's failure to award him credit for time he spent in inpatient or community corrections facilities. (*See* Petition for Review No. 873 C.D. 2020 ¶ 11.) This issue is not included in Johnson's Petition for Review filed at No. 1235 C.D. 2020, presumably because the Board addressed it in its October 27, 2020 Order. Because the Board ruled on the issue in Johnson's favor in the October 27, 2020 Order and he did not reassert it in his Petition for Review of that Order filed at No. 1235 C.D. 2020, we will not address it further.

10

**II. COUNSEL'S APPLICATION TO WITHDRAW**

On March 23, 2021, Counsel filed the Application to Withdraw on the basis that the Petitions for Review lack merit. Before appointed counsel may withdraw from representation in a case in which the right to counsel does not derive from the United States Constitution, such as here, the *Turner* or no-merit letter must contain: (1) the nature and extent of counsel's review; (2) the issues the petitioner wishes to raise; and (3) counsel's analysis in concluding that the petitioner's appeal is without merit. *Commonwealth v. Turner*, 544 A.2d 927, 928 (Pa. 1988); *Hughes v. Pa. Bd. of Prob. & Parole*, 977 A.2d 19, 24-25 (Pa. Cmwlth. 2009). In addition, counsel must send the petitioner a copy of the no-merit letter, "a copy of counsel's petition to withdraw," and a statement advising the petitioner of his right to proceed with new counsel or pro se. *Zerby v. Shanon*, 964 A.2d 956, 960 (Pa. Cmwlth. 2009). Once counsel satisfies the procedural requirements of *Turner*, this Court will "conduct its own review of the merits of the case." *Id.* (citation omitted).

In support of the Application to Withdraw, Counsel filed the No-Merit Letter, which she sent to Johnson and the Board, along with the Application to Withdraw, detailing her review of the Certified Record and relevant law. After summarizing the relevant factual and procedural history, Counsel addressed the issues Johnson raised in the Petitions for Review, as well as the other issues Johnson raised in his administrative appeals to the Board. Regarding the Board's determination as to Johnson's custody for return date, Counsel explained that, pursuant to Section 6138(a)(5) of the Prisons and Parole Code (Parole Code), 61 Pa.C.S. § 6138(a)(5), because Johnson received a new sentence to be served in an SCI, he must serve the backtime on his original sentence first. That backtime only became due and owing after his parole was revoked, i.e., on July 28, 2019, when the second Board member

signed the revocation hearing report per *Wilson v. Pennsylvania Board of Probation and Parole*, 124 A.3d 767, 770 n.6 (Pa. Cmwlth. 2015), and *Campbell v. Pennsylvania Board of Probation and Parole*, 409 A.2d 980, 981-82 (Pa. Cmwlth. 1980). (No-Merit Letter at 5.) Counsel therefore concluded that the Board used the correct custody for return date of July 28, 2019. (*Id.*) Counsel also explained the Board's recalculation of the new maximum sentence date and concluded that it was properly calculated as October 10, 2022, particularly where Johnson did not post bail, received credit for 351 days toward his new charges, and received credit through his custody return date toward his probation revocation sentence. (*Id.* at 6-7 (citing *Smith v. Pa. Bd. of Prob. & Parole*, 171 A.3d 759, 761 n.7 (Pa. 2017)).) Counsel then confirmed the Board's calculations and agreed that the October 10, 2022 maximum sentence date was accurate. (*Id.*)

As to whether the Board erred in determining that Johnson's new sentences were to be served consecutively to the original sentence, Counsel pointed out that Johnson is statutorily required, under Section 6138(a)(5) of the Parole Code, to serve his backtime first and his new state sentence second. (No-Merit Letter at 7.) Further, Counsel noted that courts are prohibited by the Parole Code from imposing concurrent sentences for new convictions. (*Id.* (citing *Walker v. Pa. Bd. of Prob. & Parole*, 729 A.2d 634, 638 (Pa. Cmwlth. 1999)).) Regarding whether the Board erred when it failed to credit Johnson's original sentence with any time that exceeded the maximum sentence allowable by law on the new sentences, Counsel explained that Johnson's argument was based on an incorrect factual premise. According to Counsel, Johnson has not lost credit for any of the time he served from his arrest to his recommitment as a CPV because such time was credited either to his new state sentence or to his VOP sentence. (*Id.*)

12

Counsel also addressed, in an abundance of caution, other issues raised in Johnson's pro se administrative appeal to the Board but not asserted in the Petitions for Review. (*Id.* at 7-8.) Regarding the Board's refusal to award Johnson credit for all of his street time, Counsel stated that the Board had the discretion to award or deny credit for street time based on the type of new conviction Johnson had. (*Id.*) Counsel also explained that the Board provided contemporaneous reasons for the Board's exercise of discretion to deny credit, as required under the Pennsylvania Supreme Court's decision in *Pittman v. Pennsylvania Board of Probation and Parole*, 159 A.3d 466, 475 (Pa. 2017). (No-Merit Letter at 8.) A review of the Certified Record, Counsel indicated, reveals that the Board's reasons are supported by Johnson's convictions and supervision history. (*Id.*) Moreover, Counsel explained, the Board did, in its discretion, grant Johnson partial credit for time he spent in a CCC and inpatient facility from August 8, 2013, to May 21, 2014. (*Id.*) Finally, regarding whether the Board erred in revoking Johnson's parole because he did not plead guilty on his new criminal charges until after the expiration of his original maximum sentence, Counsel notes that it is well settled that the Board has jurisdiction to recommit a parolee after his maximum sentence expires, so long as the crime(s) for which he is recommitted occurred while he was on parole. (*Id.* at 8-9 (citing *Miskovitch v. Pa. Bd. of Prob. & Parole*, 77 A.3d 66, 73-74 (Pa. Cmwlth. 2013)).)

Having concluded that the Petitions for Review lack merit, Counsel informed Johnson of his right to hire another attorney or file a brief on his own behalf raising any new points he might deem worthy of consideration. (Application to Withdraw ¶ 3.) Counsel also served Johnson with this Court's March 26, 2021 order informing

Johnson that he could obtain substitute counsel at his own expense or file a brief on his own behalf. Johnson did not file a brief on his own behalf.

Reviewing Counsel's submissions, we conclude that Counsel has complied with the procedural requirements of *Turner*. As set forth above, Counsel has explained the nature and extent of her review of the record, addressed the issues Johnson raised in his Petitions for Review and in his administrative appeals to the Board, and provided a thorough analysis of those issues and Counsel's reasons for concluding that they lack merit. Counsel served copies of both the Application to Withdraw and the No-Merit Letter on Johnson and the Board. In the Application to Withdraw, and by serving Johnson with the Court's March 26, 2021 order, Counsel has informed Johnson that he could retain substitute counsel or file a brief on his own behalf. Thus, Counsel has satisfied the procedural requirements of *Turner*, and we now independently review Johnson's Petitions for Review to determine whether they are without merit.[8]

## III. REVIEW OF THE MERITS
### A. *Whether the Board used the wrong custody for return date, thereby affecting the recalculation of Johnson's maximum sentence date.*

Section 6138(a)(5)(i) of the Parole Code[9] provided:

(5) If a new sentence is imposed on the parolee, the service of the balance of the term originally imposed by a Pennsylvania court shall precede the commencement of the new term imposed in the following cases:

---

[8] Our standard of review in parole revocation cases "is limited to determining whether the Board committed a constitutional violation or an error of law and whether the findings of fact are supported by substantial evidence." *Lee v. Pa. Bd. of Prob. & Parole*, 885 A.2d 634, 637 (Pa. Cmwlth. 2005).

[9] We note that various sections of the Parole Code have recently been amended by the Act of June 30, 2021, P.L. 260, No. 59. We nevertheless reference the version of the Parole Code that was in effect at the time the Board rendered its decision in this matter.

> (i) If a person is paroled from a[n SCI] and the new sentence imposed on the person is to be served in the [SCI].

*Former* 61 Pa.C.S. § 6138(a)(5)(i). However, it is well settled that the requirement that a CPV serve the balance of the original sentence "only becomes operative when parole has been revoked and the remainder of the original sentence becomes due and owing." *Campbell*, 409 A.2d at 982 (quoting *Richmond v. Commonwealth*, 402 A.2d 1134, 1135 (Pa. Cmwlth. 1979)). "Parole revocation occurs once a hearing examiner and Board member . . . sign a hearing report recommitting a prisoner as a CPV." *Barnes v. Pa. Bd. of Prob. & Parole*, 203 A.3d 382, 392 (Pa. Cmwlth. 2019) (citations omitted). Here, the Board's revocation of Johnson's parole occurred on July 28, 2019, when the Board member signed the revocation hearing report recommitting Johnson as a CPV. Thus, that is the date when Section 6138(a)(5)(i) became operative and the remainder of Johnson's original sentence became due and owing. *See Barnes*, 203 A.3d at 392; *Campbell*, 409 A.2d at 982; (C.R. at 66). Accordingly, the Board did not err in using July 28, 2019, as Johnson's custody for return date from which the new maximum sentence date could be calculated, and Johnson's argument in this regard is without merit.

> B. *Whether the Board erred in determining that Johnson's two new sentences were to be served consecutively, rather than concurrently, with Johnson's backtime.*

Section 6138(a)(5)(i) of the Parole Code requires that a CPV who receives a new sentence to be served in an SCI must serve the backtime on the original state sentence first before beginning to serve time on the new sentence. 61 Pa.C.S. § 6138(a)(5)(i). Thus, when the Board orders that a parolee serve backtime, "the original sentence and any new sentences **must be served consecutively rather than**

15

**concurrently**." *Kerak v. Pa. Bd. of Prob. & Parole*, 153 A.3d 1134, 1138 (Pa. Cmwlth. 2016) (emphasis added). Here, the Board followed the mandate of Section 6138(a)(5)(i) by concluding that Johnson's new Carbon County sentences run consecutively to his backtime and that Johnson must serve the backtime before he can begin to serve time on his new state sentences. This issue is therefore without merit.

> C. *Whether the Board erred by failing to award Johnson credit against his original sentence for time that exceeded the maximum sentence allowable by law on the new sentences.*[10]

In *Gaito v. Pennsylvania Board of Probation and Parole*, 412 A.2d 568, 571 (Pa. 1980), the Pennsylvania Supreme Court held that if the parolee has met bail on the new charges but remains in custody solely on the Board's detainer, then the time the parolee spends in custody "shall be credited against [the] original sentence." On the other hand, if the parolee "remains incarcerated prior to trial because [the parolee] has failed to satisfy bail requirements on the new criminal charges, then the time spent in custody shall be credited to [the] new sentence." *Id.* Similarly, when a parolee "[i]s detained under both the Board's warrant and the new criminal charges, this time is properly allocated to [the] new criminal sentence." *Hammonds v. Pa. Bd. of Prob. & Parole*, 143 A.3d 994, 999 (Pa. Cmwlth. 2016). Only if "it is not possible to award all of the credit on the new sentence because the period of pre[]sentence incarceration exceeds the maximum term of the new sentence" may the excess time be applied to the parolee's original sentence. *Armbruster v. Pa. Bd. of Prob. & Parole*, 919 A.2d 348, 355 (Pa. Cmwlth. 2007) (emphasis omitted).

---

[10] Our disposition of this issue also disposes of Johnson's separate but closely related argument that the Board erred when it failed to award him credit for the time he was incarcerated between June 13, 2016, and June 3, 2019, aside from the 351 days that was credited to his new sentences.

Johnson appears to be arguing that the entire period of time that he was incarcerated prior to being sentenced on the new Carbon County charges exceeds the maximum terms of his new sentences, and, therefore, the Board was required under *Armbruster* to apply the excess time to reduce the backtime he must serve on his original sentence. We disagree.

Johnson was arrested on new criminal charges in Carbon County on June 13, 2016, the Board issued its detainer warrant the same day, and Johnson did not post bail. Johnson remained incarcerated on both the Board's warrant and the new Carbon County charges until March 8, 2017, when Lackawanna Common Pleas ordered that Johnson be detained for violating his special probation. (C.R. at 147.) That court thereafter revoked Johnson's special probation and resentenced him on May 31, 2017, to an aggregate sentence of 10 months and 15 days' to 4 years' imprisonment in an SCI to be served concurrently with his backtime, without any credit due to the fact that Johnson was then being held in lieu of bail on the new Carbon County charges. (*Id*. at 39-42, 154.) Also on that date, DOC detainers were lodged as to his new VOP sentence pertaining to his original special probationary sentences. (*Id*. at 39-40.) Thereafter, on August 29, 2017, the Board cancelled its detainer warrant. (*Id.* at 38.) Johnson was ultimately sentenced to another new term of state incarceration (a total of 10 to 24 months), on June 3, 2019, for his new Carbon County convictions and was awarded 351 days of presentence confinement credit against his new 6- to 12-month sentence for possession by a person not registered for the period of June 13, 2016, until his special probation resentencing on May 31, 2017. (*Id.* at 50-51, 73, 98.) Johnson explicitly does not challenge those 351 days of credit awarded to him.

17

Johnson apparently contends, rather, that he is also entitled to presentence confinement credit for the 733-day period from May 31, 2017, the date he appears to have begun serving his VOP sentence, to June 3, 2019, the date he was sentenced on the Carbon County charges, because the entirety of his presentence confinement – 1,085 days – exceeds the maximum terms of his new Carbon County sentences, 731 days, and, therefore, the excess should be applied to reduce his original sentence. However, Johnson is not entitled to presentence confinement credit for the 733-day period from May 31, 2017, to June 3, 2019, because during that time, Johnson was not in custody awaiting sentencing in Carbon County but was instead actively serving his VOP sentence from Lackawanna County. While "an offender is to receive credit for all incarceration served before sentencing for which he is being detained in custody," *Martin v. Pennsylvania Board of Probation and Parole*, 840 A.2d 299, 304 (Pa. 2003) (citing *Gaito*, 412 A.2d at 571 n.6), Johnson did not offer any legal support, and, like Counsel, we have not found any, for the proposition that he is entitled to receive credit for incarceration that is unrelated to new charges for which sentencing has not yet occurred but to the revocation of probation from another conviction. Moreover, we note that Johnson was not detained on the Board's warrant for that entire time period. Rather, Johnson was incarcerated on the Board's detainer only until August 29, 2017, when the Board cancelled its detainer warrant, thus reducing the period at issue to 643 days, which is **less** than the new sentences Johnson received in Carbon County. As such, *Armbruster* does not apply, and Johnson is not entitled to any further credit against his original sentence. Accordingly, the Board did not err by failing to award Johnson credit against his original sentence for time that he was incarcerated prior to his Carbon County sentencing, and Johnson's argument in this regard is without merit.

18

D. *Whether the Board erred by denying Johnson credit for all of his street time.*

Section 6138(a)(2) and (2.1) of the Parole Code provided:

(2) If a [CPV's] recommitment is so ordered, the [CPV] shall be reentered to serve the remainder of the term which the [CPV] would have been compelled to serve had the parole not been granted and, except as provided under paragraph (2.1), shall be given no credit for the time at liberty on parole.

(2.1) The [B]oard may, in its discretion, award credit to a [CPV] recommitted under paragraph (2) for the time spent at liberty on parole, unless any of the following apply:

(i) The crime committed during the period of parole or while delinquent on parole is a crime of violence . . . or a crime requiring registration under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders).

(ii) The [CPV] was recommitted under [S]ection 6143 [of the Parole Code] (relating to early parole of inmates subject to Federal removal order).

*Former* 61 Pa.C.S. § 6138(a)(2), (2.1). Our Supreme Court held in *Pittman* that Section 6138(a)(2.1) "clearly and unambiguously grants the Board discretion to award credit to a CPV recommitted to serve the remainder of his sentence," other than in the enumerated exceptions. 159 A.3d at 473. The Supreme Court further held that "the Board must provide a contemporaneous statement explaining its reason for denying a CPV credit for time spent at liberty on parole." *Id.* at 475.

Here, none of the exceptions of Section 6138(a)(2.1) of the Parole Code apply, as Johnson's new Carbon County convictions were not for violent crimes or required his registration as a sexual offender, and he was not recommitted under Section 6143 of the Parole Code. As such, the Board had the discretion to grant or deny Johnson credit for his street time. The Board exercised its discretion and granted Johnson

19

relief and awarded him partial credit against his original sentence for the 286 days he resided in inpatient or community corrections facilities from August 8, 2013, to May 21, 2014. (C.R. at 155.) However, the Board's decision to award Johnson partial credit for this period does not mean that he is entitled to **all** credit on his original sentence for the rest of the time he spent at liberty on parole. The Board denied Johnson credit for the remainder of his street time, which decision was clearly within the Board's discretion once it recommitted Johnson as a CPV and provided contemporaneous reasons for doing so, as required by *Pittman*. Johnson does not challenge the sufficiency of the Board's stated reasons for denying him full credit for his time spent at liberty on parole. We, therefore, agree with Counsel that it was not an abuse of discretion for the Board to deny Johnson credit for all his street time and that this issue likewise lacks merit.

To the extent Johnson argues that the Board's credit allocations affected the calculation of his new maximum sentence date, we note that at the time Johnson was paroled on August 8, 2013, with a maximum date of August 3, 2017, Johnson had 1,456 days remaining on his original sentence. Subtracting the above 286 days left him with 1,170 days remaining on his original sentence. Johnson was arrested in Carbon County on June 13, 2016, and did not post bail, and the Board lodged a detainer warrant against him the same day. On August 29, 2017, the Board lifted its detainer. On June 3, 2019, Johnson was sentenced by Carbon Common Pleas to a new term of incarceration to be served in an SCI. On July 28, 2019, the Board recommitted Johnson. (C.R. at 66.) In its Decision, the Board noted that any time Johnson spent incarcerated that was not allocated toward his original sentence would be calculated by DOC and credited toward his new state sentence. Adding the 1,170 days remaining on Johnson's original sentence to July 28, 2019, yields a maximum

20

date of October 10, 2022, as the Board calculated. Accordingly, the Board did not err in recalculating Johnson's maximum sentence date, and Johnson's claim in this regard is without merit.

> E. *Whether the Board erred by revoking Johnson's parole after the expiration of his original maximum sentence date.*

Section 6138(a)(1) of the Parole Code provided:

> A parolee under the jurisdiction of the [B]oard released from a correctional facility who, **during the period of parole or while delinquent on parole, commits a crime punishable by imprisonment, for which the parolee is convicted** or found guilty by a judge or jury **or to which the parolee pleads guilty** or nolo contendere **at any time thereafter in a court of record, may at the discretion of the [B]oard be recommitted as a parole violator**.

*Former* 61 Pa.C.S. § 6138(a)(1) (emphasis added). Thus, if a parolee commits a crime while on parole and is convicted "at any time thereafter," he may be recommitted as a CPV. *Id.* As explained in *Miskovitch*, 77 A.3d at 74, "[i]t is well-settled law that the Board retains jurisdiction to recommit an individual as a parole violator," and thus recalculate a maximum sentence date, "after the expiration of the maximum term, so long as the crimes that lead to the conviction occurred while the individual [was] on parole."[11] *See also Adams v. Pa. Bd. of Prob. & Parole*, 885 A.2d 1121, 1124 (Pa. Cmwlth. 2005) ("There is no doubt that the Board can recommit and recompute the sentence of a parolee who commits a crime while on parole but is not convicted until after his original sentence expired.").

In this case, there is no dispute that the crimes to which Johnson ultimately pleaded guilty occurred on June 13, 2016, when he was on parole from his original

---

[11] In *Miskovitch*, 77 A.3d at 74, the parolee was arrested on new charges while on parole in 2004, his original sentence expired in 2008, and he was not convicted on the new charges until 2010.

21

state sentence which had a maximum date of August 3, 2017. (C.R. at 2, 17-23.) The fact that Johnson did not plead guilty until June 3, 2019, after the expiration of his original sentence "is irrelevant." *Miskovitch*, 77 A.3d at 74. Accordingly, the Board had jurisdiction to revoke Johnson's parole for the crimes committed during parole and to recalculate his original maximum sentence date, and Johnson's argument in this regard is without merit.

## IV. CONCLUSION

Based on the foregoing, we conclude that Counsel has met the technical requirements for seeking to withdraw as Johnson's counsel based on Counsel's conclusion that Johnson's Petitions for Review are without merit. Upon our independent review of those Petitions for Review, we agree the issues Johnson asserts are without merit. Accordingly, we grant Counsel's Application to Withdraw and affirm the Board's October 27, 2020 Order.

_____
**RENÉE COHN JUBELIRER,** Judge

22

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Breeze Johnson,                          :
                Petitioner      :
                              :   CASES CONSOLIDATED
            v.                          :   No. 873 C.D. 2020
                              :   No. 1235 C.D. 2020
Pennsylvania Parole Board,               :
                Respondent       :

# **O R D E R**

**NOW**, February 25, 2022, Jessica A. Fiscus, Esquire's Application to Withdraw Appearance is **GRANTED**, the Pennsylvania Parole Board's October 27, 2020 Order at issue in Docket No. 1235 C.D. 2020 is **AFFIRMED**, and the petition for review filed at Docket No. 873 C.D. 2020 is **DISMISSED** as moot.

                                       _____
                                        **RENÉE COHN JUBELIRER,** Judge