IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marquise Cornell Gillespie,       :
           Petitioner       :
      :
v.       :
      :
Pennsylvania Parole Board,       :    No. 5 C.D. 2025
           Respondent       :    Submitted: March 3, 2026

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON            FILED: April 7, 2026

Marquise Cornell Gillespie (Gillespie) petitions for review of the December 5, 2024, order of the Pennsylvania Parole Board (Board). The Board denied Gillespie's administrative appeal from the recalculation of his maximum sentence date after his conviction as a parole violator. Gillespie's appointed counsel, David Crowley, Esquire (Attorney Crowley), has filed an application to withdraw and a *Turner*[1] letter asserting that Gillespie's appeal lacks merit. Upon review, we grant Attorney Crowley's application to withdraw and affirm the Board's decision.

## I. Factual & Procedural Background

In August 2019, Gillespie pleaded guilty to multiple drug trafficking offenses and received a sentence having a minimum date of April 16, 2021, and a

---

[1] *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988).

maximum date of April 16, 2025. Certified Record (C.R.) at 6.[2] In October 2021, the Board granted Gillespie parole; he was released on November 23, 2021. *Id*. at 12-14. On January 21, 2023, the Department of Corrections (DOC) issued a detainer for parole violation on the same date that Gillespie was arrested in Lancaster County on charges for drug trafficking offenses committed in July 2022, when he sold fentanyl to an undercover police officer. *Id*. at 25-27 & 96. Gillespie was unable to post bail, and on February 29, 2024, he pleaded guilty to the July 2022 charges and received a prison term of 18 months to 5 years, which he began serving at a state correctional institution. *Id*. at 95 & 115-18. The Board verified Gillespie's conviction on the July 2022 charges on March 25, 2024. *Id*. at 33. On March 28, 2024, Gillespie waived his right to a hearing before a Board panel. *Id*. at 31.

On May 22, 2024, a hearing officer conducted a parole revocation hearing at which Attorney Crowley represented Gillespie. C.R. at 93. Gillespie acknowledged his convictions on the July 2022 charges. *Id*. at 49. His parole agent testified that other than Gillespie's new convictions, he had been relatively compliant with his parole conditions but that the new convictions warranted parole revocation. *Id*. at 50-51. Gillespie stated that after committing the July 2022 offenses, he had gone for in-patient drug treatment and continued to be in treatment, held several jobs and started his own home contracting business, got a new car and house, and got engaged before he was arrested in January 2023 on the July 2022 offenses. *Id*. at 52. He asked the hearing officer to consider these mitigating circumstances and requested leniency. *Id*. at 53. The May 2024 hearing concluded shortly thereafter with the hearing officer advising Gillespie that a Board decision would be issued "in the next few weeks." *Id*. at 55.

---

[2] Certified Record (C.R.) references are to electronic pagination.

On May 23, 2024, the hearing officer issued his report. C.R. at 93-105. The hearing officer recommended denying Gillespie credit for time at liberty on parole in light of his new conviction on similar charges and "unresolved" drug issues. *Id*. at 100. The hearing officer also recommended that Gillespie serve 18 months for his parole violations associated with the July 2022 charges, which were his third recommitment for parole violation. *Id*. at 105. A Board member approved and signed the report on July 15, 2024. *Id*. at 106 & 128.

On July 18, 2024, the Board ordered Gillespie recommitted as a parole violator. C.R. at 119. It is not disputed that the 405 days between Gillespie's January 2023 arrest and February 2024 conviction on the July 2022 offenses were credited to his sentence on the new offenses. *Id*. at 127. The Board subtracted Gillespie's prior parole release date of November 23, 2021, from his prior maximum date of April 16, 2025, and concluded that 1,240 days remained to be served on his prior sentence. *Id*. at 119. The Board used July 15, 2024, the date when the Board member signed the hearing officer's report recommending recommitment, as the effective date of return, added 1,240 days to that date, and calculated a new maximum date of December 7, 2027. *Id*.

Gillespie, through Attorney Crowley, filed a timely administrative appeal. C.R. at 127. He asserted that the Board's "unreasonable delays in rendering the recommitment decision in the instant matter contravened [his] due process rights." *Id*. Specifically, he averred that his March 2024 waiver of his right to a Board panel hearing "was induced by a promise of a quicker revocation hearing" before a hearing officer, but because the state prison where Gillespie was held at that time did not conduct revocation hearings, his hearing was not held for nearly two months until May 2024, after he was transferred to another state prison. *Id*. at 127-

3

28. Gillespie also alleged that at the May 2024 hearing, he was told that his report would be issued within several weeks but that the report was not issued until nearly two months later in July 2024. *Id*. at 128.

According to Gillespie, these delays resulted in nearly five months of confinement after his February 2024 sentencing for the July 2022 offenses that would be applied to his new sentence. *Id*. In combination with the 13 months of pre-sentence time that was already credited to the new sentence on the July 2022 offenses, this would leave him with about 6 days until the first possible date he could seek re-parole while serving his new sentence on the new charges. *Id*. Given the realities of the system, in which a parole hearing generally takes place at least three months from application, Gillespie argued that the Board's delays turned his judicially imposed 18-month minimum sentence on the July 2022 offenses "into at least a 21[-]month minimum sentence" before he could realistically be re-paroled. *Id*.

On December 5, 2024, the Board issued its decision and order denying relief. C.R. at 129. The Board stated that its regulations required that a parole revocation hearing be held within 120 days of the date of the violator's plea to new offenses. *Id*. Here, that was February 29, 2024, and because the May 22, 2024, hearing was held 83 days later, it was timely, and no due process violation occurred. *Id*. The Board defended its calculations and stated that the post-sentence time between Gillespie's February 2024 plea and the Board's July 2024 parole revocation was properly credited to his new sentence. *Id*. at 129-30. Gillespie, through Attorney Crowley, timely appealed to this Court in early January 2025, reasserting the above issues.

4

On May 16, 2025, after this Court issued a briefing schedule, Attorney Crowley filed an application to withdraw as Gillespie's counsel and a corresponding *Turner* letter asserting that Gillespie's appeal to this Court lacked merit. On May 21, 2025, this Court issued an Order acknowledging Attorney Crowley's filings and advising Gillespie that he could seek new counsel or proceed *pro se* with a briefing deadline of 30 days after receiving service of the Order. Gillespie has not filed a brief with this Court. The Board was never given a briefing deadline and has not filed a brief.

## II. Issues

Gillespie stated in his petition for review to this Court that the Board's December 2024 determination lacked sufficient evidence, violated Board regulations, and violated his due process rights.[3]

## III. Discussion

### A. Application to Withdraw as Counsel

When court-appointed counsel concludes that a petitioner's appeal is meritless and seeks to withdraw, counsel must notify the petitioner of his request to withdraw by sending the petitioner copies of counsel's application to withdraw and *Turner* letter; counsel must also provide in a statement that petitioner has been advised of his right to retain new counsel or proceed *pro se* and raise any points he may deem worthy of consideration in a brief on his own behalf. *See, e.g.*, *Miskovitch v. Pa. Bd. of Prob. & Parole*, 771 A.3d 66, 69 (Pa. Cmwlth. 2013); *Zerby v. Shanon*,

---

[3] This Court's review of the Board's action "is limited to determining whether the decision was supported by substantial evidence, whether an error of law occurred, or whether constitutional rights were violated." *Bailey v. Pa. Parole Bd.*, 323 A.3d 259, 263 n.8 (Pa. Cmwlth. 2024).

964 A.2d 956, 960 (Pa. Cmwlth. 2009). With regard to the latter, our current approach does not prohibit counsel from incorporating that statement into either the application to withdraw or the *Turner* letter. *See Walker v. Pa. Parole Bd.* (Pa. Cmwlth., No. 492 C.D. 2023, filed Jan. 7, 2026), slip op. at 5-10 & n.8, 2026 WL 41307, at *3-5 & n.8 (unreported)[4] (stating that in this context, "a separate statement is not a mandated requirement" and noting that the statement there was included in the application to withdraw and accompanied by counsel's certificate of service upon the petitioner via first-class mail and verification of the application's truth and correctness under penalties relating to unsworn falsifications to authorities).

Substantively, a *Turner* letter must "include an explanation of 'the nature and extent of counsel's review and list each issue the petitioner wished to have raised, with counsel's explanation of why those issues are meritless.'" *Seilhamer v. Pa. Bd. of Prob. & Parole*, 996 A.2d 40, 43 (Pa. Cmwlth. 2010) (quoting *Turner*, 544 A.2d at 928) (some alterations omitted). Once appointed counsel has complied with the technical requirements for a withdrawal, we independently review the merits of the petitioner's claims. *Miskovitch*, 771 A.3d at 70.

Here, Attorney Crowley stated in his May 16, 2025, application to withdraw that he notified Gillespie of his request to withdraw and advised Gillespie of his right to retain new counsel or raise any points that he might deem worthy of consideration by proceeding with his appeal *pro se*. Application to Withdraw at 2 (citing *Craig v. Pa. Bd. of Prob. & Parole*, 502 A.2d 758 (Pa. Cmwlth. 1985)). To that end, Attorney Crowley added that he provided Gillespie with a copy of the

---

[4] Under Section 414(a) of this Court's Internal Operating Procedures, an unpublished memorandum opinion of this Court issued after January 15, 2008, although not binding precedent, may be cited for its persuasive value. 210 Pa. Code § 69.414(a).

certified record of this matter on April 15, 2025. *Id.* Additionally, Attorney Crowley appended certificates of service to his application to withdraw and *Turner* letter indicating that he provided Gillespie with copies of those May 16, 2025, filings via first-class mail; both documents also included Attorney Crowley's verifications of their truth and correctness under penalties relating to unsworn falsifications to authorities.[5]

Substantively, Attorney Crowley's *Turner* letter sets forth the procedural history of the case and the issues, reflecting his review of the record. *Turner* Letter at 1-3. He further states that based on his review, Gillespie's issues are meritless, citing applicable statutes, regulations, and case law. *Id*. at 3-6. As we are satisfied that Attorney Crowley has discharged his responsibility in complying with the technical requirements to withdraw from representation, we grant the application to withdraw and now conduct an independent merits review.

**B. Merits**

Regarding Gillespie's assertion that the Board's alleged delay in holding his revocation hearing violated due process, the Board's regulations state that these hearings "shall be held within 120 days from the date the Board received official verification of the plea of guilty or *nolo contendere* or of the guilty verdict at the highest trial court level." 37 Pa. Code § 71.4(1). This Court has held that "if the parole revocation hearing is held within 120 days after the receipt of the certified charges, that . . . is reasonable for the purposes of due process." *Gibson v. Pa. Bd.*

---

[5] The relevant documentation filed by Attorney Crowley in this case is identical to the documentation in *Walker*, where Attorney Crowley was also appointed counsel and this Court granted his application to withdraw. *See Walker*, slip op. at 11, 2026 WL 41307, at *5.

*of Prob. & Parole*, 3 A.3d 754, 757 (Pa. Cmwlth. 2010) (quoting *Lee v. Pa. Bd. of Prob. & Parole*, 596 A.2d 264, 265 (Pa. Cmwlth. 1991)).

Gillespie's parole revocation hearing was held on May 22, 2024. C.R. at 93. Subtracting 120 days from that date results in the date of January 23, 2024; if the key dates here preceded that date, the hearing would be untimely. However, whether the 120-day period here is counted from the actual plea and conviction date of February 29, 2024, or the Board's stated date when it verified the conviction on March 25, 2024, the May 22, 2024, hearing was not untimely. As such, Gillespie's claim associated with the revocation hearing date is meritless.

Gillespie also asserts that, combined with his "late" hearing in this matter, additional delay between the hearing officer's May 23, 2024, post-hearing report recommending revocation and the Board member's July 15, 2024, signature approving and finalizing the report violated due process. He avers that by the time he is eligible for parole from his new sentence on the July 2022 offenses, the minimum period of that sentence will nearly have elapsed and the normal administrative timeframes in the parole system will add roughly three months to his minimum sentence on the July 2022 offenses before he can be released on parole if it is granted. However, this Court has explained that the pertinent statutes and regulations do not provide a timeframe within which the Board must issue its revocation decision; that the only remedy for a delay in issuing a decision is to seek mandamus, which is unavailable once a decision has been issued; and that the petitioner must assert actual harm or prejudice because of any delay. *Slotcavage v. Pa. Bd. of Prob. & Parole*, 745 A.2d 89, 91 & n.3 (Pa. Cmwlth. 2000) (stating that no due process violation occurred as a result of a six-month delay before the Board issued its decision).

8

Here, roughly two months elapsed between the hearing officer's May 2024 report and its finalization with a Board member's signature in July 2024, less time than was found to be reasonable in *Slotcavage*. The Board's decision has already been issued, so mandamus is no longer a viable remedy. Moreover, the harm Gillespie alleges is speculative: in the absence of some form of relief from this Court, if he applies for parole on his July 2022 offenses as soon as he serves his minimum sentence on those offenses (including the credits for his pre-sentence confinement and the time between his sentencing and the Board's July 2024 revocation order) and if he is granted parole and released as soon as possible, given the usual timeframes, he *might* end up serving approximately three more months in prison than his minimum sentence before his release on parole. This does not constitute "actual" harm as needed to support a due process violation. *See Slotcavage*, 745 A.2d at 91 & n.3. As such, Gillespie's claim associated with the date of the Board's revocation order is meritless.

Lastly, regarding the Board's recalculation of Gillespie's maximum sentence date, the relevant law is clear. If a parole violator is in custody "prior to trial because he has failed to satisfy bail requirements on the new criminal charges, then the time spent in custody shall be credited to his new sentence." *Smith v. Pa. Bd. of Prob. & Parole*, 171 A.3d 759, 765 (Pa. 2017) (quoting *Gaito v. Pa. Bd. of Prob. & Parole*, 412 A.2d 568 (Pa. 1980)). Relatedly, if pre-trial confinement on new offenses does not exceed the length of the sentence imposed on those offenses, that time will be credited to the new sentence. *Id*. at 768-69 (discussing *Gaito* and *Martin v. Pa. Bd. of Prob. & Parole*, 840 A.2d 299, 308-09 (Pa. 2003)).

The Board may deny credit for time spent at liberty on parole if a convicted parole violator has been convicted of new criminal offenses that are the

same or similar to the violator's prior offense. *Soto v. Pa. Parole Bd.*, 311 A.3d 1260, 1263-64 (Pa. Cmwlth. 2024). A convicted parole violator cannot begin serving back time on a prior sentence until the date when the Board formally recommits the violator through a post-hearing report signed by both the hearing examiner and a Board member. *Barnes v. Pa. Bd. of Prob. & Parole*, 203 A.3d 382, 391-92 (Pa. Cmwlth. 2019).

Here, all of the foregoing legal tenets were met. Gillespie was paroled on November 23, 2021, from his prior sentence having a maximum date of April 16, 2025. C.R. at 6 & 12-14. This left 1,240 days of unserved back time on his prior sentence. *Id*. at 119. When Gillespie was arrested on the July 2022 offenses on January 21, 2023, he could not post bail, and his sentence on those offenses of 18 months to 5 years exceeded his pre-sentence confinement time of roughly 13 months between his January 2023 arrest and February 2024 guilty plea and conviction. *Id*. at 95, 115-18 & 127. As such, those 13 months were properly credited to his new sentence rather than as back time on his prior sentence. *See* C.R. at 127; *Smith*, 171 A.3d at 765 & 768-69. The Board did not abuse its discretion in denying Gillespie credit for time at liberty based on his commission of the same or similar crimes as his original offenses and his unresolved drug issues. *See* C.R. at 100; *Soto*, 311 A.3d at 1263-64. The Board properly used July 15, 2024, when the hearing officer's report was confirmed with a Board member's signature, as the date when Gillespie could begin serving back time on his prior conviction. C.R. at 106 & 124; *Barnes*, 203 A.3d at 391-92. Lastly, the Board did not err in calculating that Gillespie's correct "return" date of July 15, 2024, plus 1,240 days of back time due, resulted in a new maximum sentence date of December 7, 2027. C.R. at 124. As the record

10

supports the Board's determination, Gillespie's claims regarding its calculations are meritless.

## IV. Conclusion

Based on the foregoing, Attorney Crowley's application to withdraw as counsel complies with the technical requirements of *Turner*. Further, based upon this Court's independent review, Gillespie's claims lack merit. Accordingly, Attorney Crowley's application is granted and the Board's order denying Gillespie's appeal from its recalculation of his maximum sentence date is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marquise Cornell Gillespie,   :
       Petitioner :
           :
   v.        :
           :
Pennsylvania Parole Board,   :  No. 5 C.D. 2025
       Respondent :

# **O R D E R**

AND NOW, this 7th day of April, 2026, the application to withdraw as counsel filed by David Crowley, Esquire, is GRANTED. The December 5, 2024, order of the Pennsylvania Parole Board is AFFIRMED.

              _____

              CHRISTINE FIZZANO CANNON, Judge